THE PEOPLE OF THE STATE OF ILLINOIS *ex relatione* GEORGE W. ROBERTS, Appellants, *v.* GEORGE W. RIVES, Appellee.

APPEAL FROM EDGAR.

Upon a petition for a mandamus, to compel a county clerk to issue a certificate of election to the relator, who was duly elected a justice of the peace, it is no defense that the clerk has already issued a certificate to the relator's competitor, and that he has been regularly commissioned by the Governor.

THIS was a petition for mandamus in the name of the People of the State of Illinois, on relation of George W. Roberts, against George W. Rives, clerk of the Edgar County Court, filed at the May term, 1861, of the Circuit Court of said county. The petition sets out, that at the regular township election for Paris township, in Edgar county, held at the court-house, in the town of Paris, pursuant to notice duly given, and in accordance with all the requirements of the statute in such cases provided, for the election of justices of the peace, and other township officers of said township of Paris, in said county of Edgar, that the said relator, George W. Roberts, was duly elected one of the justices of the peace for said township. That there was filed with the county clerk of said county, George W. Rives, a certificate of the election of said relator, and that he executed bond, with approved security, within the required time, and took the oath of office as required and prescribed by the statute, and requested said Rives, as county clerk, to certify to the Governor of the State of Illinois the election of said relator, as it was made the duty of said clerk to do by law; and that the said Rives, as county clerk, refused to make out and forward to the Governor of the State a certificate of the election of said relator to the said office of justice of the peace, as aforesaid, as it was his duty to do by virtue of the statute in such cases provided; and prays for an alternative writ of mandamus against said Rives, to compel him to certify to the Governor the election of the relator to said office, or show cause why he should not be required to do so. The petition was duly verified by the oath of the relator, and upon which petition an alternative writ of mandamus issued, and service was accepted by the defendant, Rives.

To which the defendant filed his answer, setting up, as a reason for refusal to certify to the Governor the election of said relator, that he had executed the necessary bond and

taken the requisite oath of office (which is admitted by the defendant); that said relator was not duly and legally elected justice of the peace for said township of Paris, on the 2nd day of April, 1861, as alleged, or at any other time. And for another and further return to the writ, the defendant states, that at a town meeting, held at the county clerk's office, in the town of Paris, on the 2nd day of April, 1861, in pursuance of a notice given by the town clerk, to elect, among other officers, justices of the peace for said township of Paris, that one Newton Harlan, John H. Patton and John F. Anderson, were duly elected to fill the offices of justices of the peace for said township, and that their election was certified to him by the town clerk; that said Harlan, Patton and Anderson executed bond and took the requisite oath of office and oath against dueling, and that thereupon he had, as county clerk, certified their election to the Governor before he had any notice of the election of the relator, except by rumor, and that the Governor had severally issued commissions, as justices, to said Harlan, Patton and Anderson, as justices of the peace; and that afterwards, when the relator came to the office of the defendant and filed his bond, with security, and offered to take the oath of office of justice of the peace, he received his bond and administered to him the requisite oath, and filed said bond in his office, but refused to certify the same to the Governor, because said township was only entitled to three justices of the peace, and because said Harlan, Patton and Anderson had been legally elected and commissioned justices for said township, and that defendant would stultify himself by complying with the request of the relator. A further answer sets out the same as the last—the election of Harlan, Patton and Anderson—with an additional allegation, that the pretended election under which the relator claimed his election was illegal, unauthorized and void; that his election was not certified to defendant by any one having authority in that behalf, and because he had already certified to the election of Harlan, Patton and Anderson.

To these returns the relator filed replications, in which he reasserts that he was legally and duly elected, etc., as alleged in his petition, and traverses the statement in the return of the defendant, that he had no legal notice of the relator's election; also traversing the statements, in the return and answers of the defendant, that Harlan, Patton and Anderson were duly and legally elected, and denying that the pretended election held at the clerk's office, was legal, or held in conformity with the requirements of the statute.

On these issues a trial was had, in which the following evidence was introduced on the part of the People:

*St. Clair Sutherland,* being sworn as a witness, testified: that a notice shown him was one of the election notices posted up for the township election in the town of Paris; that he saw three of them, he thinks, at the most public places in the town of Paris; said that he was present on the second day of April, when the town meeting at the court-house was organized; that previous to the organization of the meeting, and between the hours of nine and ten o'clock A. M., he called upon A. J. Magner, township clerk, found him at the post office, and requested him to come and organize the town meeting; he said he was engaged and could not come. Witness returned to the court-house; thinks there were seventy-five or one hundred persons assembled there, most of them voters of the old township of Paris, but some were from what was formerly Sim's township, but then included in Paris township, as enlarged. It was between the hours of nine and ten o'clock A. M., that the meeting proceeded to organize by electing Milton M. Dill temporary chairman; and John Bovell was chosen moderator, and Theodore Read, clerk. All were allowed to vote, and they were unanimously elected; heard no opposing vote. The officers were all legal voters and residents of the township of Paris, within the old or former boundaries of the township. Proclamation was then made that the polls were opened, and that they were ready to receive votes. This all took place before any poll was opened or meeting organized at the county clerk's office. Some forty votes must have been cast before the meeting at the clerk's office was organized. Witness was a voter and resident of the township of Paris. Elections were sometimes held at the court-house and sometimes at the clerk's office. The buildings are detached, and about twenty feet apart. Tanner has his law office at the clerk's office.

*Andrew J. Magner* testified: that he was township clerk of the township of Paris. An election notice was shown him; said it was one of those which he had put up pursuant to the requirements of the law, giving notice of the time and place of holding the town meeting for the election of township officers for the town of Paris. Witness put them at the most public places. Sutherland called on him, on the morning of the second day of April, to go to the court-house and organize the town meeting. I am postmaster in the town of Paris, and was engaged in the post office, and could not go at that time, and told him so. Some time afterwards I went to the county clerk's office and organized a meeting. It was between nine

and ten o'clock A. M. Had no engagement with any one to organize a meeting there. It is a separate building, in the court-house yard, about twenty feet from the court-house. The county clerk and county judge occupy it for an office, and Mr. Tanner has his law office there. Elections are sometimes held at the court-house, and sometimes at the clerk's office. John J. Logan was chosen moderator, at the clerk's office, and A. Y. Trogdon, clerk. It was before ten o'clock the meeting was organized. Don't know whether any proclamation was made of the opening of the polls or not.

The notice identified was then read, as follows:

### "ELECTION NOTICE.

"The citizens (legal voters) of Paris township, in the county of Edgar and State of Illinois, are hereby notified, that the annual town meeting of said township will be held at the court-house, on Tuesday, the second day of April next, being the first Tuesday in said month, for the purposes following: To elect one supervisor, one town clerk, one assessor, one collector, one overseer of the poor, three commissioners of highways, three justices of the peace, three constables, and to act upon any additional business which may in pursuance of law come before said meeting at the proper time when convened; which meeting will be called to order at eight o'clock in the forenoon, and be kept open until six o'clock P. M., unless sooner closed in pursuance of law. Given under my hand, at Paris, this 11th day of March, A. D. 1861.

A. J. MAGNER, *Town Clerk.*"

*James A. Eads* testified: was a voter of Paris township; was at the court-house about the time the town meeting was organized there. I voted at the court-house. Think my vote was numbered somewhere in forty. Went from court-house to clerk's office, and the meeting there was just being opened. Clerk's office is in a separate building, detached from the court-house. All were allowed to vote at the court-house. Persons voted there who lived in that part of Paris township which was formerly Sim's.

*William F. Young* testified: that he was township clerk of Paris township, or claimed to be under the election held on the second day of April, 1861. The minutes of said election were deposited with him. That the signatures to them were those of John Bovell and Theodore Read. The certificate was in the handwriting of Thomas Marks, an acting justice of the peace for Edgar county. Stated that he filed certificate of election for George W. Roberts and John J. Fouts with George W. Rives.

The minutes of the town meeting were then read in evidence. They show that the number of electors who voted were four hundred and five, and that for justices of the peace, George W. Roberts received 371 votes; John J. Fouts, 388 votes; Winston Griffin, 372 votes; Hardin Myers, 361 votes; Newton Harlan, 35 votes; John H. Patton, 17 votes; and John Anderson, 17 votes.

The bond was next read in evidence.

The written oath taken by the relator, George W. Roberts, was also read in evidence.

The defendant introduced and read the minutes of the town meeting at the county clerk's office on the second day of April, 1861. The minutes show one John J. Logan was chosen moderator, and A. Y. Trogdon, clerk. That the meeting was called to order by A. J. Magner, and that they proceeded to the election of township officers. That the polls were closed at forty minutes after four P. M., and that of the ballots cast for justices of the peace, at said meeting, John H. Patton received 277 votes; Newton Harlan, 280 votes; John H. Anderson, 218 votes.

To the minutes is attached the certificate of A. Y. Trogdon, clerk of the meeting.

The defendant also offered and read in evidence a record of the board of supervisors of Edgar county, so enlarging the boundaries of Paris township as to include all the territory formerly included in Sim's township.

*Thomas C. W. Sale* testified: that by his watch it was just half-past nine when the polls at the clerk's office were opened.

And upon the foregoing evidence the case was submitted to the court, who denied and refused to grant a peremptory mandamus, and rendered judgment against the relator for costs. To which ruling and decision of the court the counsel for the People at the time excepted, and prayed an appeal, which was granted.

The errors assigned are: the court erred in refusing to grant a peremptory mandamus; and the judgment of the court was contrary to the law and evidence of the case.

A. GREEN, for Appellant.

E. S. TERRY, JAS. A. EADS, and THOMAS C. W. SALE, for Appellees.

CATON, C. J. The town meeting at the court-house was convened in pursuance of the notice, and in the place specified therein, and was organized strictly in pursuance of the

provisions of the law, and beyond all doubt the business transacted at that meeting was legal and binding upon the town; and the election there held was valid. The meeting subsequently organized has not the least semblance of legality about it. It was at a place different from that mentioned in the notice, and after the regular meeting was organized, and more than forty votes cast. Indeed, it has the appearance of a secession from the regular town meeting, by a disappointed or discontented faction; and what took place there cannot deprive the relator of his right to a commission for the office to which he was elected, at a regular town meeting duly organized and held.

It is objected, that the defendant has already issued a certificate for another, to whom has been issued a commission for the same office. That cannot affect the rights of the relator. As well might it be contended that a certificate issued to one without color of an election, would prevent the clerk from issuing the certificate to the relator. We do not propose to turn the others out of office on an application for a mandamus. They are not parties to this record, and are not bound by this adjudication. All that the court can do, and all it is asked to do in this proceeding, is to compel the county clerk to issue to the relator a certificate of election, which the proof shows he was entitled to. Our right and our duty to do this was fully considered and settled in *The People ex rel.* v. *Matteson,* 17 Ill. 167. A peremptory mandamus should have been issued.

The judgment of the Circuit Court is reversed and the cause remanded, with directions to award the writ as prayed for.

*Judgment reversed.*