---

## THE PEOPLE *ex rel. v.* THE COMMISSIONERS OF GRAND COUNTY *et al.*

(*Supreme Court of Colorado, April 21, 1882—Mandamus, on Rehearing.*)

1. CONSTITUTIONAL LAW—PRE-EXISTING STATUTE NOT REPEALED BY CONSTITUTION, THOUGH IT WOULD BE INVALID IF SUBSEQUENTLY ENACTED. While the doctrine encountered considerable opposition at first, and was announced by divided Courts, it is now a settled rule of construction that constitutional provisions, prohibiting the enactment of local or special laws, are wholly prospective, and only intended to affect future legislation. A

clause continuing in force laws not inconsistent with the constitution, is held not to abrogate laws which, if subsequently enacted, would be clearly inconsistent and therefore unconstitutional. (Overruling or withdrawing the former opinion in this case, as published in 2 Colo. Law Reporter, 294.)

2. ELECTION AS TO COUNTY SEATS—ACTION OF BOARD OF CANVASSERS NOT CONCLUSIVE. The action of the county board of canvassers, in canvassing and announcing the result of a vote as to the location of a county seat, is not conclusive. Such action may be inquired into in a proper judicial proceeding. The action of the Commissioners in such case amounts to no more than to raise the presumption that the result was as announced by them, which presumption may be rebutted by testimony.

3. NO APPEAL lies from action of canvassers in declaring result of an election to change a county seat. The statute has made no provision for such an appeal. Nor is there a remedy by *quo warranto*, that remedy being employed only to test the right to an office or franchise.

BECK, J. In the opinion recently announced in this case, it was held that at the time of the election in Grand county, to determine the question of the removal of the county seat, no law existed upon that subject authorizing the election. For this reason the steps taken to change the county seat were held to be void. This conclusion was arrived at from the following, among other considerations, to wit:

That the Territorial statute (section 42, chapter XX, R. S., as amended by the act of February 9, 1876,) which constituted the only law on the subject of the removal of county seats, was a special or local law, and for this reason was in conflict with section 25, article V, of the State constitution. This section prohibits the General Assembly from passing special or local laws in this and other specified cases, and in all cases where a general law can be made applicable.

This statute being, as was supposed, inconsistent with the constitution, we held that it was not saved by section 1 of the schedule, which provides as follows: "All laws in force at the adoption of this constitution shall, so far as not inconsistent therewith, remain of the same force as if this constitution had not been adopted, until they expire by their own limitation, or are altered or repealed by the General Assembly."

After the opinion was announced, a petition for a rehearing was presented, accompanied by briefs calling our attention to a series of adjudications of similar questions, not previously referred to, growing out of constitutional provisions of other

States identical with our own. These cases being in conflict with the views expressed in the opinion, we granted a rehearing, and directed a re-argument upon this point. The counsel of the respective parties, assisted by other members of the bar, who appeared as *amici curæ*, have favored us with able and exhaustive arguments, both oral and by briefs, upon both sides of this question.

After due examination of the authorities, and upon mature reflection, we are satisfied that the opinion rendered in this case is opposed to the current of authority on the point decided.

Therefore, notwithstanding the numerous and weighty considerations that might be urged in favor of the view previously taken, and despite the doubts which we may entertain as to the actual intentions of the framers of our constitution in respect to this subject, it would be fruitless, in face of the adjudications, to enumerate the former, or to speculate as to the latter. The law of the case is in favor of the constitutionality of the statute. Similar provisions had, long prior to the adoption of our constitution, existed in the constitutions of many of the States, and had been construed as wholly prospective, and as only intended to affect future legislation. At first this doctrine met with opposition, as being unsound in principle, and it was announced by divided Courts; but later it received a unanimity of opinion which gave to it the force of a settled rule of construction. It was held that they were not intended to annul or affect existing laws of the character prohibited. The clause continuing in force laws not inconsistent with the constitution, was held not to abrogate laws which, if subsequently enacted, would be clearly inconsistent and unconstitutional.

Whatever, therefore, might be our final views upon principle, if the point presented was an original question, we conceive it to be our duty to subscribe to the settled doctrine. The point is *stare decisis*. These provisions of our constitution were taken from the constitution of other States, where they had previously received a settled and uniform interpretation.

The presumption obtains that this interpretation was known and adopted by the convention at the time these provisions were engrafted upon our fundamental law.

For the reasons stated, the opinion filed herein is withdrawn, and the statute held valid. See *Cass* v. *Dillon*, 2 Ohio St., 607;

*State* v. *Trustees, etc.*, 8 Ohio St., 394; *Allbuyer* v. *State*, 10 Ohio St., 588; *State* v. *Barbee*, 3 Ind., 258; *State* v. *Macon Co. Court*, 41 Mo., 453; *State* v. *Thompson*, 2 Ks., 432; *Lehigh Iron Co.* v. *Lower Macungie Tp.*, 81 Pa. St., 484; *Ind. Co.* v. *Agricultural Society*, 85 Pa. St., 357; *Ex parte Burke*, Sup. Ct. Cal., 2 Colorado Law Reporter, 150.

We will now proceed to consider other questions raised by the demurrer of the petitioner to the answer of the respondents. But to do so intelligently a brief statement of pleadings is necessary.

The substantial allegations of the alternative writ of *mandamus* are, that the county seat of Grand county was located at Hot Sulphur Springs on the 2d day of February, 1874, and that afterward, on the 9th day of April, 1881, the board of county commissioners, (defendants,) assuming to act under color of office, ordered and declared the county seat to be removed and located at Grand Lake. That the county officers, by order of the commissioners, removed their offices to Grand Lake, and have ever since held them there and transacted all official business at that place, but without authority of law.

The petition states the additional facts, that in the month of October, 1880, a petition praying the submission of the question of removal to a vote of the people of the county was submitted to the board of commissioners, and that the board caused notices to be posted that the question of removal would be submitted at the next general election, and in pursuance thereof, it was submitted at the general election, held November 2, 1880. That the county board of canvassers met on 12th day of November, and, after canvassing the vote, officially determined that the majority of the voters of the county were opposed to the removal.

The answer admits the location of the county seat at Hot Sulphur Springs in 1874, and also admits that the board of county commissioners declared the county seat to be at Grand Lake in April, 1881; admits the removal of county offices and the transaction of county business at the latter place since that time. But the answer avers that the change was ordered as the result of an election regularly called and held to determine the question of changing the county seat, and which resulted in favor of Grand Lake, as shown by the abstract of votes polled, the

places contesting being Hot Sulphur Springs and Grand Lake ; that the board of canvassers discarded and threw out sixty-two of the votes so polled, alleging them to be illegal, which changed the result of the election, and left a majority vote in favor of Hot Sulphur Springs.

The answer denies that the votes so discarded were illegal, and avers that the county commissioners ordered the removal of the various offices, with their effects and property, to Grand Lake, in pursuance of the result of the election.

The principal question raised by the demurrer to this answer is, whether the matters therein alleged, by way of confession and avoidance, are properly issuable in a proceeding by *mandamus*.

Counsel for the relator contends that the action of the board of canvassers cannot be questioned here; that the conduct of the canvassers cannot be attacked collaterally; that the law presumes they did their duty, and that so far as this proceeding is concerned, their action is conclusive on this Court.

It is further insisted that if anyone is aggrieved by the action of the canvassers, he has his remedy by *quo warranto*.

As to the matters of defense which may be set up in answer or return to the alternative writ, the rule is, that the return must either deny the facts stated, on which the claim of the relator is founded, or must state other facts, sufficient in law to defeat the relator's claim. Moses on Mandamus, p. 210.

Thompson, J., in *Commonwealth ex rel. Armstrong* v. *The Commissioners, etc.*, 37 Pa. St., 277, says: "The respondent, upon service of it (the writ,) is bound to obey, or show that the plaintiff has no right to demand obedience, or that no duty exists which he can be compelled to perform. Whenever this is not accomplished by a demurrer, or by a general traverse of the facts set forth in the writ, it is generally done by matters averred in the return by way of confession and avoidance," citing Tap. on Man., 347; 8 Casey, 218; 10 Casey, 496.

Section 305 of the Civil Code provides that, in the return of the alternative writ, the person · on whom the writ has been served "may show cause by answer under oath, made in the same manner as an answer to a complaint in a civil action."

Section 306, which provides for the trial of the issue raised by the answer, is as follows: "If an answer is made which raises a question as to a matter of fact essential to the determination of

the motion, and affecting the substantial rights of the parties, and upon the supposed truth of which the writ is based, the Court or Judge may, in its discretion, order the question to be tried before a jury, and postpone the argument until such trial can be had, and the verdict certified to the Court or Judge."

Now, the principal facts alleged in the petition for the writ, upon the supposed truth of which the writ was granted, were, that "the county board of canvassers caused their canvass of said election to be correctly stated and duly returned,       *

*       *       and by their statement as aforesaid, determined that a majority of the legal voters were opposed to the removal of the county seat;" and that regardless of this canvass and the result of the election, the county commissioners caused the removal of the county offices to Grand Lake.

The answer admits the principal facts charged, but seeks to avoid the effect of the allegations by the averments, that Grand Lake had a clear majority of all the votes cast at the election by those qualified to vote upon the question of removal of the county seat, as shown by the abstract of votes made by the canvassers, but the result was changed in favor of Hot Sulphur Springs by the illegal action of the board in throwing out legal votes.

The answer, therefore, presents an issue of fact as to the true result of the election.   This is a good and proper issue unless, by reason of statutory provisions, the law presumes that the canvassers did their duty, as suggested by relator's counsel, and their action is conclusive in this proceeding.

The soundness of these propositions depends upon the powers conferred by law upon the board of canvassers, and whether the law provided an appeal from their action in such a case as this.

The presumption which the law indulges in favor of the conduct of public officers is always liable to be rebutted in a proper proceeding.   Whether this be a proper proceeding to test the validity of the election may, perhaps, depend upon the question, whether the laws of the State afforded a plain and ample remedy for contesting the election.   Code of Civil Procedure, Sec. 302; *State ex rel. Ayres* v. *Stockwell*, 7 Ks., 98.

Our statute makes no provision for a contest of an election of this character.   No tribunal is provided, and no mention made

of the subject.    The only election contests authorized in counties, are those of officers.    G. L., Secs. 1018–1034.

It is also clear that there is no remedy by *quo warranto*, for that remedy is only employed to test the right to an office or franchise.    High Ex. Leg. Rem., Sec. 618; *People ex rel.* v. *Whitcomb*, 55 Ills., 172.

Unless, therefore, the functions of the canvassing officers were of a judicial nature, and their determination as to the result of the vote partakes of the nature of a judgment, there remains no doubt of the right to inquire into the regularity and validity of their acts in this proceeding.

What, then, were the powers conferred by law upon the board of canvassers?

The general rule is, that the powers of canvassers are ministerial, involving simply the labor of counting the votes returned, and determining who has received the highest number.    They have a *quasi* judicial power to determine whether the papers transmitted to them are genuine election returns, but they have no judicial power to reject votes polled.    High Ex. Leg. Rem., Sec. 56; McCrary on Election, Secs. 81–85, and authorities cited.

Of course the rule is subject to modification by statute.    No statutory modification, however, existed, which in any manner changed the rule in the case at bar.    But two changes had been made, one providing for a contest in case of town and precinct officers, before the canvassing board; the other, that in case of a tie vote for a county or precinct office, the same board should determine by lot which of the two candidates should be elected. G. L., Secs. 1034, 978.

The statute did not, in terms, authorize the county board of canvassers to canvass this vote at all, but having required the vote to be taken at the regular county election, and to be canvassed, the authority may fairly be implied, no other provision being made for the canvass thereof.

The conclusion at which we arrive, is, that the regularity of the proceedings of the board of canvassers may be inquired into in this proceeding, and if the result of the election was, in fact, as alleged in the answer of the respondents, justice and law alike require that the peremptory writ be denied.

In addition to the authorities cited, our views are supported by the case of *Calaveras County* v. *Brockway*, 30 Cal., 336, a

case very similar in its essential features to the case under consideration. It was likewise the case of an election to determine the removal of a county seat. The board of supervisors had canvassed the vote, which was conceded to have been proper, and had declared the result to be in favor of removal. The county officers refused to remove, and the Judges of the District and County Courts refused to hold courts at the new county seat. To an alternative writ of *mandamus* they answered, among other things, that the declaration and determination of the board of supervisors was untrue and false in fact as to the number of votes given for the location of the county seat. A motion to strike out this averment was denied.

Another portion of the answer denied that the Board had estimated the entire vote, and averred that the former county seat had received a majority of the whole number of votes cast at the election. These averments were demurred to on the ground that the petition having alleged that the board of supervisors had canvassed the returns of the election pursuant to law, and declared the result thereof, their adjudication could not be attacked collaterally except for fraud. In support of the demurrer it was suggested that the only remedy for aggrieved parties was under the act for contesting elections.

The demurrer was overruled, the Court remarking that the act referred to only provided for contesting the election of officers, and that no contest could be had in that case, since no office was involved; also, that, assuming the authority of the board of supervisors to canvass the votes and declare the result of the election, it did not follow that their determination was conclusive, though in the first instance it stood as *prima facie* evidence that the result was as declared. Like all other *prima facie* evidence, it was open to contradiction.

The observations of the Court upon the issues there joined are so pertinent to the present case, that we cite them as expressive of our views upon the issues joined here:

"If," said the Court, "the fact were otherwise than as determined by the board, it would be an unjust denial of the rights of the electors of the county to shut the door against all remedy for the redress of the wrong. If San Andreas was elected and thereby established as the county seat of Calaveras county, it was by the expressed will of a majority of the electors who

54

voted, and not by the determination or certificate of the board of supervisors. If a false estimate of the number of votes cast for the respective places was made and announced by the board, whether intentionally or otherwise, justice demands that the injured party or portion of the citizens of the county should have an opportunity of making it manifest, and of having the true result ascertained and determined."

As a result of the views expressed upon the points raised by the demurrer to the answer in the case before us, the demurrer will be overruled. And it appearing that the answer to the writ raises an issue of fact essential to the determination of the cause, and affecting the substantial rights of the parties, it is therefore ordered that the cause be referred to the District Court of Grand county, for trial of said issue of fact before a jury, or before the Court without a jury, if a jury shall be waived by the parties.

It further appearing that the Judge of said District Court is only a nominal party to this proceeding, the same may be dismissed as to him, or he may call upon the Judge of another district to preside at said trial.

The issue to be tried is—

What number of votes was cast by the qualified electors of Grand county, at the general election held in said county on the second day of November, A. D. 1880, on the question of the removal of the county seat of said county; and of the number of votes so cast, what number of legal votes was for "Hot Sulphur Springs," for county seat, and what number for "Grand Lake," for county seat?

It is further ordered that a copy of this opinion and order be certified by the clerk of this Court to the clerk of the District Court of Grand county, and that the same be filed in the office of the clerk of the District Court of Grand county.

We further order that said District Court, upon final trial of said issue, return to this Court the verdict of the jury that may be sworn and impaneled to try the same, or the finding of the Court in said issue if a trial by jury shall be waived.

*L. B. France,* for relators.

*Morrison & Fillius,* for respondents.

*Hugh Butler, Rhett & Hobson, Wells, Smith & Macon, Haynes, Dunning & Haynes, amici curæ.*