## KINDEL v. LE BERT.

1. COURT RULES—JUDICIAL NOTICE.

In the absence of a statute so providing, this court cannot take judicial notice of a standing rule adopted in the district court.

2. SAME—APPELLATE PRACTICE.

An assignment of error predicated upon an alleged violation of a standing rule of the court below cannot be considered unless the rule be embodied in the record.

3. PRACTICE—ORDER OF PROOF.

The order of proof is always discretionary with the trial court.

4. SAME.

The court below, in a contested election case in which fraud was alleged, refused to require the opening of the ballot boxes and a recounting of the ballots until some evidence of the fraud alleged was introduced. *Held*, that its discretion was, under the circumstances, commendably exercised.

5. ELECTION CONTESTS—AMENDMENTS.

The statute regulating election contests makes no provision for the amendment of pleadings, and hence a right to amend in such a case does not exist.

6. PLEADING—FRAUD.

A mere charge of fraud without setting out the ultimate facts consti-
tuting the fraud is not such an allegation as calls for a denial.

7. ELECTION OFFICERS—CANDIDATE FOR REËLECTION.

The statute charging the county clerk with the performance of certain
duties with respect to the general control and supervision of elec-
tions does not disqualify him to stand as a candidate to succeed
himself, neither does the fact that he was a candidate for reëlection
disqualify him to act as a member of the board canvassing the vote
cast at such election.

8. APPEAL.

When, pending an appeal in the matter of a contested election, an event
occurs, such as the destruction of the ballots cast at the election,
which under the circumstances of the case renders any ruling which
might be made in favor of the appellant ineffectual, the court may
decline to pass upon any of the controverted questions.

*Appeal from the District Court of Arapahoe County.*

AT THE general election in November, 1895, Richard Le Bert
and George J. Kindel were opposing candidates for the office
of county clerk of Arapahoe county. Upon the face of the
returns, Le Bert was declared elected by the canvassing
board, and Kindel instituted this proceeding in the county
court of Arapahoe county under our contested elections act
(Session Laws 1885, p. 193) against Le Bert, as contestee,
to set aside the election as declared, and to obtain a judgment
declaring contestor elected to the office.

The original voluminous statement of the contestor, filed
in the county court on the 30th of November, 1895, specifi-
cally charges that legal votes cast in the various precincts of
the county for the contestor were improperly and fraudu-
lently rejected by the judges of election ; that votes which,
for various reasons, were illegal, were therein cast and counted
for the contestee ; that the latter, by bribery, intimidation and
corruption, and other nefarious means, received illegal votes
that ought not to have been counted for him, and prevented
legal votes from being cast and counted for contestor; that
the contestee was guilty of various designated acts of fraud
in the matter of the distribution of the ballot boxes and bal-

lots to the various election boards; and that in one precinct the judges were guilty of fraud.

In the twenty-ninth specification of the statement is a general allegation that the contestee, as county clerk, performed certain acts in and about the conduct of the election which the statute itself imposes upon the county clerk, but which, under the facts of this case, as contestee was himself a candidate for reëlection, were fraudulent and void; particularly were those acts void which he performed in assisting in the canvass of the votes upon the returns made to him by the various election boards. This is followed by another general charge of tampering with, and altering, the returns by the contestee after they were received by him, as county clerk, from the judges of election; by reason of all of which the contestor says he was cheated and defrauded out of the election, and that, in truth and fact, he received a majority of the legal votes cast, and was entitled to be declared elected.

To this statement, on the 10th of the following December, the contestee filed his answer, specifically denying all the charges made against him, except those, if any there be, set forth in the twenty-ninth specification of the statement, and setting up countercharges of frauds and wrongdoings of a character as sweeping and specific, and just as corrupt and flagrant, as were those charged in the statement of the contestor; the contestee alleging that his majority of the legal votes cast was, in fact, in excess of that appearing upon the face of the returns. These new matters in the answer in turn were denied in the replication, which was filed on the 18th of December.

There is no order in the record setting the case for trial, although from the subpœnas which have been certified up, it seems that the county court fixed as the day for trial the 4th of February, 1896, although trial was not then begun.

After the issues had thus been made up, the counsel who originally were acting for the contestor withdrew, and new counsel appeared for him.

On the 18th of February, upon application of the contestor

alleging prejudice of the county judge, the cause was certified to the district court of the second judicial district of Colorado, embracing Arapahoe county only. There are five judges of the court, each presiding in a separate division. On the 21st of February the new counsel for contestor, appearing in the division to which this proceeding was assigned by the clerk, claimed that it was improperly there, and asked that it be sent to another division, in which, under the standing rules of the court, it ought to have been filed in the first instance. The request of contestor, as made, was denied; but the presiding judge sent the cause to another division, where he decided it belonged. Before the judge of the latter division where the cause was thus sent, the contestor again (on February 24th) presented his application, asking that the cause be sent to that division which contestor claimed had jurisdiction of it, and his application was again denied.

Thereafter it appears that the five judges of the court, as properly they might do, agreed among themselves that neither one should hear this cause, and so the cause was set for trial April 20th, and Hon. C. C. Holbrook, judge of the twelfth judicial district of this state, was requested by Judge Palmer, who was presiding in the division of the court where the cause was pending, to try the same.

Judge Holbrook complied with this request, and no objection to him was made by the contestor. On the day as thus set for trial the contestor made an application to the court (Judge Holbrook presiding) for leave to file an amended statement of contest. It would seem from the record, although it is somewhat uncertain, that like application was made before the county court on the 12th of February, after the issues were made up and the day for the trial had passed, for leave to file this amended statement; but inasmuch as by consent of the parties all interlocutory orders of the county court were vacated, and have not been inserted in the record, it does not clearly appear what, if any, ruling the county court made. This amended statement does not purport to be merely an amendment of the original causes of

contest set up in the original statement, nor was its design to perfect or supplement any of the same; but by far the larger part thereof sets up, as causes of contest, grounds that were not in the original statement at all, while other portions charge additional fraudulent acts of the same general nature as those contained in some of the original specifications;—such, for example, as that the board of county commissioners of Arapahoe county and the contestee, as clerk, were guilty of malconduct, fraud and corruption in the making of the registration of electors for said election, and in the appointment of judges, and in the registration of illegal voters; and such charges as that the county clerk certified upon the registry lists which were sent out to the judges the names of persons not entitled to be thereon, and in issuing certificates of registration upon the day of the election to persons not entitled to receive them, and various charges of fraud against the election judges, were each and all distinct causes of contest not appearing in the original statement. The court denied leave to file the amended statement upon the ground that the special proceeding under which this contest must be determined does not authorize any amendment of the pleadings. Thereupon proof was made by the contestor, under his original statement, that he was an elector. He then asked permission to open the ballot boxes and inspect and count the ballots. As a condition precedent the court required him first to introduce some evidence tending to establish some of the frauds alleged, and the boxes would then be opened, but the contestor refused to avail himself of this offer. The court further ruled that the boxes might then be opened for the purpose of ascertaining from the ballots if any of the mistakes complained of had been committed. This offer was likewise declined by the contestor, and he refused to offer any further evidence. The court then found the issues for the contestee, and it appearing from the pleadings that, upon the face of the returns, Le Bert had a majority of the votes and held the certificate from the canvassing board, he was thereupon adjudged to be

duly elected, and entitled to hold the office in question. To reverse this judgment contestor has appealed to this court.

Mr. H. J. HERSEY, Mr. H. B. O'REILLY and Mr. E. F. RICHARDSON, for appellant.

Messrs. FELKER & DAYTON, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

Although the contestee does not concede the power of the county court to transfer this proceeding to the district court, or the jurisdiction of the district court to hear and determine this contest, he has not assigned for error the act of the former in certifying the cause to the latter, or the assumption by the latter of such jurisdiction. While jurisdiction of the subject-matter cannot be conferred by waiver or consent of the parties, yet, as counsel have not discussed either of these points, we do not feel called upon, in the absence of full argument, to determine questions of such importance. We therefore proceed directly to a consideration of the errors assigned. This must not be taken either as an affirmance or disapproval of said respective rulings of the lower courts.

The errors specified are that the case was improperly assigned; that the court erred in refusing leave to file the amended statement; in refusing a recount of the ballots; and in denying contestor's motion for judgment upon the pleadings.

1. Except in the brief of counsel, we are not advised that there is a standing rule of the district court for the assignment of causes to the different divisions. If that is so, and it was violated by the district court, to entitle the party aggrieved to a review of the ruling complained of it is indispensable that the rule be embodied somewhere in the transcript of the record, for rules prescribed by the district court for the regulation of its practice cannot be taken judi-

cial notice of by this court, unless so provided by statute. *Scott v. Scott,* 17 Md. 78.

There is, however, a stronger reason than this why appellant cannot complain of this ruling. In passing upon an application for a writ of mandamus asked by contestor in this case, this court used this language: " The relator's right, however, is not the right to select a particular judge, but a right to reject a judge that is disqualified to try the case for any reason known to the law." *People ex rel. Kindel v. Clerk of District Court, etc.,* 22 Colo. 280. Moreover, according to his own contention, the prejudice, if any, to the contestor, resulting from an improper assignment, consisted not in the fact that his case was transferred to one particular division of the court rather than to another, but that the judge presiding in the assigned division was objectionable, or the judge presiding over the division to which he wished the transfer made was less objectionable, or, in fact, favorable, to the applicant. It is clear, therefore, that when the contestor appeared below, and, without objection, went to trial before Judge Holbrook in that division where the cause was then pending, he waived any objections theretofore made by him to the assignment of the cause to that division.

2. The error predicated upon an alleged refusal of the court to order a recount of the ballots is not tenable. The facts upon which this assignment purports to be based are not in this record. It is true the contestor, before the introduction of any substantive testimony tending to establish the charges of fraud, asked the court to order the ballot boxes to be opened that the ballots might be inspected. The court, however, expressly ruled that it would permit the ballot boxes to be opened for the purpose of ascertaining whether any of the mistakes charged by the contestor had been committed, because, if any errors of computation were made, the ballots themselves would show that fact; but refused to allow them to be opened for an examination as to the frauds alleged until there had first been some testimony tending to establish such charges, and this latter ruling was, in part, based upon

the ground that the ballots, without such other evidence, would not tend to prove the frauds. While, therefore, *it is* not a fair statement to say that the court altogether refused to allow the ballot boxes to be opened, its qualified refusal to do so was entirely proper, and in accordance with the doctrine announced in *Clanton v. Ryan*, 14 Colo. 419. The order of proof is always discretionary with the trial court, and will not be interfered with by an appellate court except where there is abuse of that discretion. The reasonable requirement of the trial court that some evidence should first be introduced as to these charges of fraud before going to the expense of bringing in, from the different precincts of the county, the election judges with their keys to open the ballot boxes, was not only within the legal discretion of the trial court, but commends itself to our judgment as a wise exercise of that discretion.

3. As to the right of an amendment to pleadings under statutes providing a special procedure for election contests, the authorities are not harmonious. In the earlier cases in Pennsylvania it seems that the right to amend was denied, or sparingly exercised. In the later cases this rule in that jurisdiction is relaxed, and amendments as to matters of form, or such as are made to amend or complete causes of contest contemplated within the original statement, are allowed under the common law power of the court to permit amendments. *Election Cases*, 65 Pa. St. 20.

In Illinois proceedings in election contests, under the special statute, are held to be, to all intents and purposes, chancery proceedings, and the rule in equity permitting amendments is applied. *Dale v. Irwin*, 78 Ill. 170.

In *Heyfron v. Mahoney*, 9 Mont. 497, an amendment correcting the spelling of the names of persons set forth in the original pleading, and one adding new names, were allowed, the court remarking that as to the former the trial court could have distinguished without the amendment, and as to the latter, it was not sufficient to control the judgment. The case, then, is authority only for the proposition that an

amendment as to form, or as to some matter attempted to be set up in the original pleading, can be made.

In the case of *Brown v. McCollum*, 76 Iowa, 479, it was held that the plaintiff may make any amendment to his original statement that he thinks proper. This ruling was under the provisions of an act which expressly provided for amendments, and assimilated proceedings, as near as practicable, to the practice in civil actions. In terms the court held that any amendment which the contestor might see fit to make was proper, and might contain an entirely new cause of action. From the language of the opinion, taken in connection with the fact that the nature of the amendment allowed is not shown, it is difficult to determine whether the court based the ruling upon the provisions of the civil code, or entirely upon the election statute. This is manifest, because, in a later case (*Randall v. Christianson*, 84 Iowa, 501), the same court declined to determine whether, under the provisions of their code, it was proper for the court to allow an amendment setting up a new cause of action. But the decision seems to be based upon the provisions of the election statute, which was interpreted as authorizing so radical an amendment.

In McCrary on Elections, sec. 396, it is said that an amendment in proper cases should be allowed. Where it is proper, it should be seasonably applied for and under sufficient showing. Ibid., secs. 407, 408. And if it would work a continuance or a considerable delay, it should not be granted.

Upon the other hand, where, as in Colorado, the procedure is governed by a special act which does not provide for amendments, and in which the proceedings are not assimilated to some practice that does so provide, it has been expressly held that it was beyond the power of the court to permit amendments to be made. *Ford v. Wright*, 13 Minn. 518; *Bull v. Southwick*, 2 N. M. 321, 362, *et seq.*; *Vigil v. Pradt*, 4 N. M. 375; 6 Am. & Eng. Ency. of Law, 407.

In the case of *Schwarz v. County Court*, 14 Colo. 44, because not necessary to the determination of that case, this

court expressly declined to decide the point. But as it held that the act furnished a complete system of procedure within itself, this case gives countenance to the doctrine that, in special proceedings, the right to amend depends upon the provisions of the act itself. Additional recognition is found in the decisions of this court under the eminent domain act, which prescribes a complete system of procedure for the taking or damaging of private property. Under that act it has been decided that the code provisions " on the subject of amendments to pleadings are inapplicable." *Knoth v. Barclay*, 8 Colo. 300; *Tripp v. Overocker*, 7 Colo. 72; *Colo. Cent. R. Co. v. Allen*, 13 Colo. 229, 242.

So far as our investigation has gone, it is only in the *Iowa Case, supra* (if, indeed, that case goes to that length), where an amendment has been permitted setting up a new and distinct cause of action. In all of the other cases, the amendments were made for the purpose of correcting or perfecting statements in causes of action contained in the original pleading. Upon principle, and in the light of these authorities, we are of opinion that where the statute itself provides for amendments, but does not define their scope, those relating to formal matters, or which are made for the purpose of perfecting and completing causes of contest comprehended within the original statement, may, upon a proper showing and if applied for within a reasonable time, be permitted; but in the absence of such a permissive statute, not even amendments of this nature can be made, and, unless there is a provision expressly so providing, no new cause of action or contest can be set up by way of amendment.

At the common law, neither in an action at law nor in a suit in equity, could an amendment to a pleading of a party instituting the suit be made which introduced a new cause of action. Bliss on Code Pleading (2d ed.), sec. 429. The same practice prevails in the majority of the states which have adopted the reformed code of procedure. *Givens v. Wheeler*, 6 Colo. 149; *U. P. Ry. Co. v. Sternberg*, 13 Colo. 141; *Davis v. Johnson*, 4 Colo. App. 545.

In another view, the refusal of the district court to allow to be filed this amended statement was right, whether the provision of our code, the election act in question, or the common law practice, governs.   This is apparent when we consider that the contestor altogether abandoned his original statement, though it well pleaded several causes of contest. He did not limit his request to amend causes of contest set up in the original statement, but asked permission to amend by introducing entirely new and distinct causes.

Even if the object of the amended statement was to perfect existing causes of contest, and the code provision applied, as contended by the contestor, the application was not accompanied by an affidavit with any sufficient showing why the amendment should be made, or why the original statement was not, in the first instance, sufficiently explicit. Code 1887, sec. 75.   It is true that the amended statement was verified, and therein was an allegation in general terms to the effect that it could not have been sooner tendered ; yet an inspection of the amended statement and the facts of the case as disclosed by the record abundantly negative this claim.   In the original statement were a number of causes of contest well pleaded.   If established by the proof, they would entitle contestor to a judgment.   He waived his unquestioned right to proceed to trial upon the merits, and hinged his entire case upon the uncertain chance of obtaining a reversal of the ruling of the trial court denying an application to amend.   This he did, well knowing that the probabilities were against him, for in a previous decision by this court (*Schwarz Case, supra*) doubt was inferentially cast upon the right of amendment; and in several decisions, *supra*, under the eminent domain act, involving precisely the same principle, the holding was that the code provision relating to amendments of pleadings was inapplicable.

4. The motion for judgment upon the pleadings is predicated upon the twenty-ninth cause of contest, which is not denied in the answer.   It is based upon two grounds: *first*, that the contestee tampered with the returns as made to him by

the election board; and, *second*, that he was incapacitated to become a candidate for reëlection.

As to the former, it is only necessary to say that every rational rule of pleading with which we are acquainted requires that the ultimate facts constituting fraud be set forth.  The evidentiary facts should not be pleaded, but at least a general statement of the acts or words constituting the fraud must be alleged.  A mere statement that one is guilty of fraud, which is all that this particular specification contains, is not sufficient to call for a denial.  *Bennett v. Reef*, 16 Colo. 431; *Thomas v. Mackey*, 3 Colo. 390; *Burdsall v. Waggoner*, 4 Colo. 256; *Robinson v. Dolores*, etc., *Canal Co.*, 2 Colo. App. 17; *Stimson v. Helps*, 9 Colo. 33; *Tucker v. Parks*, 7 Colo. 62, 71; Mills' Ann. Code, pp. 111 (n. 99 and 100), 168 (n. 136), 176, and cases cited; Bliss on Code Pl. (2d ed.), sec. 211.

Besides this, there is no allegation in this specification that the tampering with the returns prejudiced the contestor, or changed the result of the election.

The second ground of the motion we now proceed to consider.  That the election statute makes it the duty of the county clerk to prepare the registry of voters, to make up and print the ballots, to distribute the ballot boxes and the ballots to the election boards, and gives him general control and supervision over elections, certainly does not disqualify him as a candidate to succeed himself.  While not controlling, we know the facts to be that not only in our own state, from the beginning down to the present, but in many other states having similar statutes, it has been the custom for officers invested with similar powers to be candidates for reëlection.  No question, so far as we know, has been heretofore raised touching their qualification.

Whatever weight these considerations possess might properly be directed to the legislative branch of the government as a reason why it should expressly disqualify him as a candidate when it invests an official with such sweeping power. As applicable to the question before us, it is without merit.

But we apprehend that the real point of the argument is

that since section 1626 of Mills' Annotated Statutes (Gen. Stats. 1883, sec. 1202) makes the county clerk one of the board of three members to canvass and declare the result of the election, this is an attempt on the part of the legislature to make one who is a candidate for reëlection to the office of county clerk a judge in his own case, which it is beyond the power of the legislature to do.   Or, to put it in another form : Since the statute invests the officer with judicial power to determine the result of an election, which, by the terms of the statute, he is bound to exercise, he thereby becomes incapacitated as a candidate for reëlection.   As a leading case we are cited to *Commonwealth v. McCloskey*, 2 Rawle (Pa.), 369, found, also, in Brightley's Election Cases, 196.   There it was held that one elected to the office of county supervisor could not be a judge of his own election.   An examination of the case shows that the statute itself made the members of the board of supervisors judges of said election, gave them full power and authority to approve thereof, or set aside the same and order a new election, and invested them with power as ample and as clearly judicial as that which our act confers upon county courts.   Properly, therefore, it was held that the act of McCloskey in assuming to pass upon and judge of his own election was void.

In the case of *Dimes v. Grand Junction Canal*, 3 House of Lords Cases, *759, the decision was that the lord chancellor was disqualified from pronouncing a decree in a case while he was interested in a corporation which was one of the parties to the suit.

In the United States senate it was determined that a senator whose election was contested could not vote upon his right to the office.   Congressional Globe, 1865 and 1866, p. 1635, *et seq.*

It will be observed that in all these and similar cases that might be cited the inhibited power exercised was clearly judicial.   In the English case and in the Pennsylvania case the mere statement shows this.   When we consider that, under the constitution of the United States, "each house

shall be the judge of the elections, returns and qualifications of its own members," the fact is equally apparent. None of the cases cited are in point, either as to the nature of the powers conferred, or as to the eligibility of one holding such office as a candidate to succeed himself.

In the case before us, the power exercised by the canvassing board, of which contestee was one member, is purely ministerial, or, as has been otherwise expressed, mathematical. The only power conferred, and the only duty required, of the canvassing board in relation to the canvass, is to count the votes based upon the returns as made by the election judges, and to give certificates to those receiving a majority of the votes thus ascertained. The canvassing board cannot go beyond or behind the returns, or reject votes, or otherwise inquire into the validity or conduct of the election. Upon the proposition that such duties are, in no sense, judicial, the authorities are uniform. *People ex rel. Dean v. County Commissioners*, 6 Colo. 202, 209 ; *People ex rel. Brewster & Jones v. Kilduff*, 15 Ill. 492 ; *People ex rel. Cummings v. Head*, 25 Ill. 325 ; *People ex rel. Fuller v. Hilliard et al.*, 29 Ill. 413 ; *People ex rel. Roberts v. Rives*, 27 Ill. 242 ; *County of Lawrence v. Schmaulhausen et al.*, 123 Ill. 321.

Courts always approach the decision of election contests with more or less reluctance, for the bitterness frequently incident to election controversies is sometimes continued throughout the ensuing legal proceedings. While they would welcome a divestiture of their jurisdiction to review and determine political questions, so long as the law confers the power, imperative duty leaves no other alternative than to decide these controversies. In the case at bar, however, we are relieved of much of the embarrassment usually attending these contests, for had the conclusions reached by us upon the foregoing questions of practice been in favor of the contestor, still a judgment here in accordance with his contentions would not afford him any relief in this particular case. Since this appeal was lodged in this court, an event has occurred which renders ineffectual, as to contestor, any

judgment that might be rendered in his favor. It seems that no sufficient provision for preserving these ballots as evidence was made, as might have been done at contestor's instance, and the ballot boxes containing them were distributed to the election judges, and the ballots cast at the election in 1895 were, at the election in 1896, taken from the boxes and burned by the election judges just before the voting began. This is authorized by section 1646 of Mills' Ann. Statutes (Gen. Stats., sec. 1221). It is conceded by contestor that the destruction of these ballots has eliminated from the case all questions of fraud, and that even if, upon this appeal, there was a reversal, he would be obliged to abandon his contest in the court below, unless, indeed, the contestee was incapacitated to succeed himself, which proposition has been resolved against him by a previous decision of this court.

We may also add that, under the authority of *Mills v. Green*, 159 U. S. 651, we might properly have declined to pass upon any of the controverted questions, and dismissed the appeal because of the happening of the event which rendered action by this court a useless proceeding, so far as the contestor is concerned. But considering the public interests involved, it has been deemed best to settle these questions in order that the legislature, now in session, may, if it see fit, provide a different procedure from that now existing. With the wisdom of the act concerning contested elections, we are not concerned. The evident object of the legislature was to provide a speedy and summary remedy. There are weighty arguments upon both sides of the proposition concerning amendments of pleadings. Every facility should be afforded to one alleging that the choice of the people has been corruptly thwarted, or unlawful impediments placed in the way of the voters, or that the result of an election, as declared, does not correctly express the will of the legal majority. It must be remembered, if the right to amend is given to the contestant, it should be given also to the contestee. The term of office of county officials is two years, and if as

liberal a rule in reference to amendments should be provided in these contests as obtains in civil actions under our code, the door would be opened wide for technical obstructions and delays, and it is conceivable that the term of office might, in some cases, nearly, if not quite, expire before the issues could be settled. Without reference, however, to legislative policy or the wisdom of the procedure provided, we have construed the law as we find it.

From the foregoing it follows that the judgment of the district court should be affirmed, and it is so ordered.

*Affirmed.*