[No. 7975.]

## WILEY v. McDOWELL.

1. ELECTIONS—*Ballot*—*How Voter's Intention to be Ascertained*— Under the statute (Rev. Stat. sec. 2236) neither the judges of the election nor the courts are authorized to go beyond what the voter has set down upon his ballot to ascertain his intention.

It is not to be said that because different party organizations, bearing different names, and presenting different tickets were understood by the voters to mean the same party, one voting the straight ticket to one of these organizations, intended to vote for a candidate named in the ticket of another of such organizations, for an office for which no candidate was named on the ballot voted.

2. ELECTION CONTEST—*Condition of Ballot Boxes*—*Burden of Proof* —Where, in an election contest, the answer charges that the ballot boxes had been tampered with, the contestor traversing this allegation, and demanding a recount of the ballots, assumes the burden of proof.

3. ——*Failure of Judges to Return the Ballots to the Box*, after the canvas, held immaterial, where the evidence conclusively showed that the ballots had not been tampered with, and the contestor lost rather than gained by the recount.

4. ——*Contestor Entitled to a recount of the Ballots*, as of course. *Clanton v. Ryan*, 14 Colo. 419; *Kindel v. Lebert*, 23 Colo. 385 followed. (Rev. Stat. § 2316.)

*Error to Gunnison County Court.*—Hon. GEORGE HETHERINGTON, Judge.

Messrs. SAPP & NASH, and Mr. J. M. McDOUGAL, for plaintiff in error.

Mr. E. M. NOURSE, and Messrs. CRUMP & ALLEN, for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the court:

At the last general election the parties to this action were rival candidates for the office of county commissioner for Gunnison County. The plaintiff in error was the candidate upon the Democratic ticket. The defendant in error was the candidate upon the Republican and Progressive tickets. The canvassing board found that the defendant in error had received the highest number of votes and issued to him the certificate of election. The plaintiff in error instituted this contest, alleging that a certain number of ballots sufficient to change the result (giving the number, precincts, etc., in detail) in which the voter wrote either the word "Roosevelt" or "Bull Moose" in the space intended to be filled out in order to vote a straight party ticket, and in which no cross or other mark was made opposite the name of the defendant in error, were counted and returned for the defendant in error; that the defendant in error was not upon the Bull Moose or Roosevelt tickets; that neither of said parties placed in nomination, or had, any candidates in Gunnison County for the office of county commissioner.

These facts were established. The court in its findings so declared, but was of opinion, although the defendant in error was not upon the Bull Moose or Roosevelt tickets, but was only upon the Republican and Progressive tickets, that these ballots should be counted for him and he so ordered, making his findings and reasons therefor, as follows:

"That considering the form of the ballots and the general and prevalent opinion among electors that the Progressive, Bull Moose and Roosevelt parties, and tickets were identical, it therefore was clearly the intention of the electors voting the straight Bull Moose and Roosevelt tickets to vote the Progressive county ticket, unless otherwise marked, and said ballots not being so marked, it was clearly the intention of the fourteen voters casting

them to have intended to vote for contestee, and therefore, said fourteen Bull Moose and Roosevelt ballots should be counted for said contestee McDowell, giving him a majority of eight votes.''

In this respect the trial court was in error. Elections are regulated by statutes. General Section 2236, Revised Statutes, 1908, in part reads:

''Any voter desiring to vote a straight ticket may write within the blank space above provided for, the name of the party whose ticket he may wish to vote, and any ballot so cast shall be counted for all the nominees upon said ticket, except when the voter has marked opposite the name or names of any individual candidate or some other party, which individual marks opposite such individual candidate shall count for them, and shall not be counted for the candidates for the same office upon the ticket whose party name the voter has so filled in the blank at the head of the ticket.''

In *Nicholls v. Barrick,* 27 Colo., at page 442, 62 Pac. 202, this court said:

''The intention of the voter, as expressed upon the face of his ballot, has always been regarded as the cardinal principle controlling the count. Under a system providing for balloting like the Australian, it is necessary that certain rules be prescribed to prevent confusion and secure uniformity. By this means the intention of the voter is to be ascertained.''

These principles have repeatedly been recognized and followed in this jurisdiction. *Young v. Simpson,* 21 Colo. 460, 42 Pac. 666, 52 Am. St. 254; *Heiskell v. Landrum,* 23 Colo., 65, 46 Pac. 620; *Rhode v. Steinmetz,* 25 Colo., 308, 55 Pac. 814.

It appears to be the universal rule in all states which have adopted the so-called Australian system, as said by the supreme court of Iowa in *Whittam v. Zahorik,* 91 Iowa, 23, 59 N. W. 57, 51 Am. St. 317, whether

a ballot should be counted does not depend solely upon the power to ascertain and declare the choice of the voter, but also upon the expression of that choice in the manner provided by the statute. To put it in another way, as was said in *Vallier v. Brakke,* 7 S. D. at page 354, 64 N. W. 180:

"The statute having prescribed the manner. in which the elector may designate by marks upon his ballot the candidate for whom he intends to vote, and declared the effect of such marks, neither the judges of election nor the courts are authorized to go beyond those marks in order to ascertain the voter's intention."

It was alleged and sought to be shown, that the Progressive, Bull Moose and Roosevelt tickets were the same and represented the same party, and that the candidates on each of said tickets for state officers were the same persons, and a vote cast for anyone was a vote for the same party as either of the others; that the words "Progressive," "Bull Moose" and "Roosevelt" each meant,. and were understood by the voters to mean, the same party; that while in Gunnison county the Progressive was the only one which filed a separate and distinct petition endorsing the Republican county ticket and candidates, thereby placing in nomination as their candidates the same as those already upon the Republican ticket; that it was the same in fact as if separate petitions had been secured and filed representing each of said names, for which reason that the electors who wrote either the word "Roosevelt" or "Bull Moose" in the space in the ballot to be filled out in order to vote a straight ticket, intended thereby to vote for the county candidates on the Republican and Progressive tickets and did so vote. We cannot accept this conclusion. In *McCrary on Elec-tions,* (3rd Ed.), section 507, it is said:

"While it is true that evidence *aliunde* may be received to explain an imperfect or ambiguous ballot, it

does not by any means follow that such evidence may be received to give to a ballot a meaning or effect hostile to what it expresses on its face. The intention of the voter can not be proven to contradict the ballot, or when it is opposed to the paper ballot which he has deposited in the ballot box."

In *People v. Seaman,* 5 Denio's Reports (N. Y.), at page 412, in commenting upon this subject the court said:

"The intention of the elector cannot be thus inquired into when it is opposed or hostile to the paper ballot which he has deposited in the ballot box. We might with the same propriety permit it to be proved that he intended to vote for one man when his ballot was cast for another; a species of proof not to be tolerated."

To adopt the theory of the defendant in error would be to hold that although an elector had properly voted a particular ticket, in the manner and form provided for by statute, that he intended thereby not only to do that, but also to vote for a candidate whose name was not upon that ticket, but which was upon another ticket, for the reason that he understood that the three tickets and parties were one and the same. This would be to ignore the provisions of the statute in their requirements as to how an elector shall vote in order to have his ticket counted, and also to say, regardless of all such requirements, that in a contest an elector or others would be permitted to say that they presumed certain people were upon certain tickets when they were not, and that on account of such presumptions their ballots should be counted for them, for the reason that they intended to vote for them, even though they did not.

The fallacy of this argument and the danger which it might lead to, is apparent from this record. The only witnesses called to prove that the voters in Gunnison county understood and believed that the Progressive, Bull Moose and Roosevelt tickets were one and the same,

and that it was not necessary to place county candidates
upon but one of these tickets, in order to have them cover
all three, were a Mr. Whipp and a Dr. Sanford.   Their
testimony was substantially as follows: Mr. Whipp was
asked, "Q. I will ask you to state if it was generally
known throughout the length and breadth of the state
of Colorado that they were identical, through your read-
ing of newspapers and other discussions publicly made
in regard to these parties?"  "A. If there was any dis-
tinction I never discovered it."   The witness also said
that he was a Republican judge in precinct No. 1 and
acetd as a Progressive; that they had some straight
ballots in that precinct marked Roosevelt or Bull Moose,
but that they did not count them for the Progressive
county ticket.   Dr. Sanford was asked, "Q. I will ask
you to state to the court if you know what relation the
organization or party, so-called Bull Moose and Roose-
velt parties, bore to the Progressive party—what rela-
tion  did they bear to each other?"   "A. They were
identical, sir."  "Q. I will ask you to state whether it
was a matter of general knowledge and generally known
to the people throughout this county and state, that per-
sons voting for the Bull Moose, or what is known or
called the Bull Moose or Roosevelt parties thereby voted
for the candidates of the Progressive party?"  "A. As
Secretary of the Progressive party formation in Gunni-
son County I sent out literature all over, of every sort,
concerning it, to inform people as to that very question,
and I tried to reach everybody with it, and from that I
should judge that most everybody did know that they
were identical in their formation.  Not having had a
sufficient number to insert the three names in this county
by petition, we contented ourselves with one, Progress-
ive, and we had such a short time to do it or we would
have certainly made petitions for the other two names
as well as the Progressive."  "Q. I will ask you whether

or not it was not generally known and accepted and a matter of general knowledge that they were identical, those parties, throughout the county of Gunnison?" "A. Yes, sir." Upon cross examination the witness admitted that there was no county Bull Moose or Roosevelt ticket; also, that he sent out literature advising the members of the Progressive party, or rather the three parties to vote the Progressive ticket, and not to vote the Bull Moose or the Roosevelt ticket. It will thus be observed that preceding the time of the election Dr. Sanford was advising his people to vote the Progressive ticket, and not the Roosevelt or Bull Moose ticket. The reason was that they had no county Bull Moose or Roosevelt ticket, and hence, that if they did not vote this ticket alone, they would not be voting for anybody upon the county ticket. This was correct. While Mr. Whipp says he understood that they were one and the same, yet as a sworn judge of election he did not thus count them, but, as he states, counted the tickets the way they read, that is, where an elector had voted a Roosevelt or Bull Moose ticket his vote was not counted for the county candidates for the reason that these parties had no candidates upon the ticket for county offices. It will be observed that his understanding as a sworn judge of election was not in harmony with his understanding as a witness which, if relevant, might have had a tendency to sustain this contention.

The ballots disclose that the defendant in error was only upon the Republican and Progressive tickets. Any elector by glancing at the names could have readily ascertained this fact, so that the claim that the intention of an elector who voted the Bull Moose or Roosevelt ticket was a vote for the defendant in error, is not only in conflict with the provisions of the statute, but is a contention which cannot be gathered from the ballot, nor otherwise than from the individual statement of each

voter, which, to sustain it, would have to be that he intended to do what he in no manner made an effort to do. This would be violative of every legal test as well as in conflict with all precedent.

By assignment of cross-errors the defendant in error contends that the court erred in opening any of the ballot boxes and ordering a recount of the votes. It being charged in the answer that the boxes had been tampered with and had not been preserved by the county clerk in the manner provided by law, the contestor assumed the burden of proving that they had not been tampered with or molested, and that they were in the same condition as when received by the clerk. The court found that the ballot boxes had not been tampered with or molested in an illegal manner, or that the ballots therein or any of them had been substituted or altered, and ordered a recount of the ballots in certain precincts. Under the issues as made by the pleadings the contestor was entitled to a recount of these ballots as a matter of course. *Clanton v. Ryan,* 14 Colo. 419, 24 Pac. 258; *Kindel v. Le Bert,* 23 Colo. 385, 48 Pac. 631, 58 Am. St. 234.

Counsel have cited many authorities concerning the manner in which these boxes should be preserved while in the custody of the clerk. It is unnecessary to review them in detail but is sufficient to say that there is evidence to the effect that the statutes in this respect were substantially complied with, with probably the exception of Pitkin precinct No. 7, where, after the ballots were counted by the judges of election, it appears that they were not put back into the official ballot box, but were placed in a pasteboard box and with the pollbook tied up and thus returned to the county clerk with the official box, where, at the time of the canvass, this paper box was opened by the clerk and the pollbook removed therefrom and the box with the ballots therein was again

closed, and tied with a string. The condition of this box becomes immaterial for the reason that the plaintiff in error lost two votes by the recount of this precinct, so that his total from it given him at the trial was two less than had been awarded him by the judges of election. It is also proper to note that the evidence is practically conclusive of the fact that the ruling of the trial court was correct in holding that these ballots had not been tampered with. The vote was close. The contention hinged around a few certain ballots in which had been written the word "Roosevelt" or "Bull Moose." There was no contention concerning crosses being added or erased, or that the ballots had been otherwise disfigured as in *Rhode v. Steinmetz*, 25 Colo. 308, nor that the words "Bull Moose" or "Roosevelt" had in any manner been substituted for any other name. The evidence discloses that there was no intentional fraud upon the part of anyone, but that the real contention was the manner in which these Roosevelt and Bull Moose ballots should be counted.

For the reasons stated the judgment is reversed and the cause remanded with instructions to enter a decree in harmony with the prayer of the plaintiff in error.

*Reversed.*

Decision *en banc.*