## PEOPLE EX REL. BARTON V. LONDONER.

1. QUO WARRANTO — JURISDICTION OF COURTS.— Unless the legislative intent to take away the jurisdiction of courts by information in the nature of *quo warranto* is so clearly expressed as to be practically beyond a reasonable doubt, it remains undisturbed..

2. AMENDMENT OF SPECIAL CITY CHARTER — LOCAL LEGISLATION — CONSTITUTIONAL INHIBITION.— Amendments to the special charter of a city incorporated prior to the constitution, which city declines to re-incorporate under the general law passed after the adoption of that instrument, are not obnoxious to the constitutional inhibition relating to local legislation.

3. "ELECTION CONTESTS" — CONSTITUTIONAL PROVISION PROSPECTIVE. The clause in the constitution commanding the legislature to provide by general law for the trial of " election contests " is purely prospective in its operation; it did not repeal the provision of a special charter relating to contests for the office of mayor, existing prior to the adoption of that instrument.

4. SAME — WHEN STATUTE THEREFOR EXCLUSIVE.— When the constitution commands the legislature to provide a method and forum for the trial of " election contests," the statute passed in obedience

to such command is exclusive as to such contests, though no ex-
clusive words be employed.

5. DISTINCTION BETWEEN PROCEEDING BY QUO WARRANTO AND "ELEC-
TION CONTEST" — JURISDICTION.— But a proceeding by the people
in the nature of *quo warranto*, for the purpose of trying the in-
cumbent's title to office, regardless of the claimant's right, is not
an "election contest" within the meaning of this phrase as em-
ployed in section 13, article XIV, of the constitution. And statutes
passed by the legislature in obedience to the constitutional man-
date relating to contested elections do not deprive the courts of
jurisdiction to inquire by *quo warranto* into usurpations and un-
lawful holdings of office.

6. BALLOT-BOXES — RIGHT TO OPEN IN ELECTION CONTESTS.— The con-
stitutional provision extending the right at the trial of "election
contests" to open ballot-boxes and examine the ballots found
therein does not forbid the exercise of this privilege in *quo war-
ranto* proceedings.

7. RELATOR — QUALIFICATION OF.— One possessing the qualifications of
"freeholder, resident and elector" is not disqualified from acting
as relator in *quo warranto* proceedings by reason of having been
the opposing candidate for the office in question.

## *Appeal from District Court of Arapahoe County.*

AT an election for mayor of the city of Denver, held in
April last, relator, Barton, and respondent, Londoner,
were opposing candidates. The returns on their face
gave a majority of three hundred and seventy-seven for
respondent. Upon a canvass by the proper board, re-
spondent was declared elected. A certificate issued to
him accordingly; and he duly qualified, and has since
discharged the duties of the office.

Relator claimed that upwards of one thousand five
hundred of the votes cast for respondent were illegal and
fraudulent, and that therefore he (relator) was elected,
and rightfully entitled to the office. He took the proper
oath, and demanded admission thereto, but was refused.
Thereupon he instituted this proceeding in the district
court.

The jurisdiction of the court was challenged by de-
murrer. The demurrer was sustained, and judgment

rendered dismissing the proceeding. From this judgment the present appeal was taken.

The material constitutional provisions referred to in the opinion, but not quoted, are the following:

Const., art. 14:

"Sec. 13. The general assembly shall provide by general laws for the organization and classification of cities and towns. The number of such classes shall not exceed four, and the powers of each class shall be defined by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions.

"Sec. 14. The general assembly shall also make provision by general law whereby any city, town or village, incorporated by any special or local law, may elect to become subject to and be governed by the general law relating to such corporations."

Art. 7:

"Sec. 8. All elections by the people shall be by ballot. Every ballot voted shall be numbered in the order in which it shall be received, and the number be recorded by the election officers on the list of voters, opposite the name of the voter who presents the ballot. The election officers shall be sworn or affirmed not to inquire or disclose how any elector shall have voted. In all cases of contested elections the ballots cast may be counted, compared with the list of voters, and examined, under such safeguards and regulations as may be prescribed by law."

Messrs. PENCE & PENCE, for appellant.

Messrs. WOLCOTT & VAILE, GEO. W. EASLEY and Mr. LUCIUS P. MARSH, for appellee.

CHIEF JUSTICE HELM delivered the opinion of the court.

1. It is asserted by respondent that the district court had no jurisdiction to entertain the present proceeding,

and that court itself so declared when dismissing the petition. The assertion and judgment are based upon the following statute, and certain constitutional provisions hereinafter considered: ''If the election of a mayor * * * shall be contested, the contest shall be heard and determined by the board of supervisors, under rules which said board shall establish for such hearing." Denver City Charter, art. 4, § 9.

The mayor of Denver is not a member of the city council. He does not preside over either branch of that body, nor does he participate in their proceedings. His relation to the council is in this respect somewhat analogous to that existing between the governor and state legislature. Therefore, no argument can be based upon the fact that each of the boards constituting the council is, by another section of the same act, made the sole judge of the qualifications, election and returns of its own members.

Does the language employed in the statute above quoted operate to deprive the courts of jurisdiction in the premises by *quo warranto?*

*Quo warranto* is one of the most ancient and important writs known to the common law; the modern proceeding by information, which has almost entirely superseded the ancient writ, being itself nearly two hundred years old. This jurisdiction is expressly given to the supreme court by our constitution. It is also, beyond doubt, included in the powers conferred by that instrument upon the district courts, where, however, its exercise may be as regulated by statute. It receives express legislative recognition; its ancient use and efficacy being by statute united with its modern, enlarged scope. And while a few cases hold the contrary, the great weight of authority, as well as the better reason, supports the proposition that, unless the legislative intent to take away the jurisdiction is expressed so clearly as to be practically beyond a reasonable doubt, it will be re-

garded as undisturbed.   Such intent does not thus appear in the statute before us.   The board of supervisors is not made the "sole" or "exclusive" tribunal to try the contest for mayor, nor are any words employed expressly eliminating the judicial jurisdiction in question.   Provisions substantially similar to the one before us have been held to create a cumulative remedy merely, and not to inhibit proceedings by quo warranto.   1 Dill. Mun. Corp. § 202, and cases; McCrary, Elect. § 295, and cases. See, also, Darrow v. People, 8 Colo. 417; State v. Camden, 47 N. J. Law, 64; State v. Kempf, 69 Wis. 470; People v. Hall, 80 N. Y. Ct. App. 117; Hardin v. Governor, 63 Ga. 588; State v. Shay, 101 Ind. 36; State v. Adams, 65 Ind. 393; Com. v. Allen, 70 Pa. St. 465.

The fact that the jurisdiction of state legislative bodies in election contests affecting their own members has universally been held exclusive does not render such jurisdiction when lodged in a municipal corporation also exclusive.   The reasoning in those cases which rely upon the supposed analogy between the legislature and council has been shown fallacious.   We shall not state the considerations whereby this fallacy appears, but content ourselves by citing a few of the cases in which it is demonstrated: Com. v. Allen, supra; People v. Hall, supra; State v. Kempf, supra; State v. Camden, supra.

So far as this branch of the discussion is concerned, which is confined to the language of the provision cited, we must hold the statutory remedy under consideration concurrent with the prescribed code proceeding by information in the nature of quo warranto.

2. But a more difficult question presented in this case is predicated upon section 12, article 7, of the constitution, which reads: "The general assembly shall, by general law, designate the courts and judges by whom the several classes of election contests not herein provided for shall be tried, and regulate the manner of trial and all matters incident thereto."   We are told that this con-

stitutional provision when supplemented by appropriate legislation so operates as to make the proceedings for election contests thus provided exclusive, and inhibit all other methods of trying title to office.

(*a*) A preliminary consideration is suggested by relator in argument. He earnestly contends that the charter provision relating to the election of mayor is void under this constitutional mandate, on the ground that it is a special and not a general statute; and therefore, since no valid legislative action has been taken in obedience to the constitutional command, that the remedy by information remains unaffected. This specific question was passed upon in *Darrow v. People*, 8 Colo. 426, but we shall again notice it briefly.

Prior to the adoption of the constitution Denver was incorporated under a special charter. No action has ever been taken in pursuance of section 14, article 14, of that instrument, abandoning the charter and re-incorporating under the general laws authorized by section 13 of the same article. On the contrary the special charter has been tenaciously preserved, and from time to time amended to meet the requirements of a growing and prosperous city. The right to make amendments thereto, even though palpably local legislation, has been considered and upheld by this court. *Brown v. City of Denver*, 7 Colo. 305; *Carpenter v. People*, 8 Colo. 116; *Darrow v. People, supra.*

Among the specific provisions of the charter existing at the adoption of the constitution was the following: "Whenever an election of mayor shall be contested, the city council shall determine the same, as may be prescribed by ordinance." Sess. Laws 1874, p. 260, § 6. This clause in the city charter was not repealed by the constitution. That instrument simply commanded future legislation, and was purely prospective in its operation. Therefore the statute in question was, in any event, saved by section 1 of the schedule. *People v. Board*, 6

Colo. 202.   But, if this were not so, since the constitutional provision is general and affirmative, referring to election contests generally, no negative words being employed, while the statute was a special and particular provision, relating to a particular and purely local election contest, a doubt might fairly arise as to whether the two clauses were so irreconcilably inconsistent as to justify the application of the doctrine relating to implied repeals.

By sections 13, 14, article 14, of the constitution, already referred to, the whole subject of towns and cities is, with two slight limitations, relegated to the legislature.   In connection with such municipal corporations, that body is, by these provisions, left to exercise almost plenary power.   It determines the mode of organization, and provides for all matters pertaining to government, including the number and kind of officers, their election or appointment, and duties.   It may or may not, at its option, create the office of mayor.   In some important particulars, all municipal offices are wholly unlike offices created by or expressly recognized in the constitution. Thus these corporations are given a peculiar constitutional *status*.   This fact has been recognized in various ways; for instance, the constitutional declaration that the judicial power of the state shall be lodged in certain specified courts is held not violated by giving the city council exclusive power to adjudicate contested elections of their own members.   1 Dill. Mun. Corp. § 200.   Moreover, said section 14 has been construed as an express constitutional recognition of the right to amend as well as to retain existing special charters.   See cases in 7th and 8th Colorado, above cited.

Thus, towns and cities like Denver, while retaining their special charters, appear to be a class of municipal corporations *sui generis*, so far as constitutional objection generally on the ground of local and special legislation is concerned.   And construing section 12, article 7,

of the constitution *in pari materia* with sections 13 and 14, article 14, we are of the opinion that the statute under consideration may stand. The original provision remained in force when the constitution was adopted, and the amendment was authorized by that instrument. Hence the requirement of said section 12 in relation to general laws does not control.

We must, therefore, treat the charter provision as valid, and proceed to consider the present objection accordingly.

(b) Because the constitution, in section 12, article 7, directs specific legislation for the trial of "election contests," it does not necessarily follow that the people, in their sovereign capacity, are thereby precluded from inquiring by information in the nature of *quo warranto* into usurpations of office. The framers of that instrument were, in this provision, dealing with the subject of *election contests as such*. They did not intend to revoke the jurisdiction by *quo warranto* so carefully given by them elsewhere to this and other courts (Const. art. 6, §§ 3, 11),— a jurisdiction which, though recognized at the common law, had also long been, and then was, specially lodged in the territorial courts by existing statute.

"Election contests" and *quo warranto* proceedings differ materially in the primary and principal objects for which they are brought, as well as in their procedure. "Election contests," purely, are usually instituted within a prescribed period after the election, by or on behalf of the unsuccessful candidate, for the purpose of establishing his right to the particular office in controversy. And though our statutes permit any elector, upon giving security for costs, to challenge in this way the right to occupy certain county offices, yet neither in this nor in any other contesting provision of which we are aware, *is authority given any public officer or private individual to institute a proceeding, in the name of the state, having for its distinctive purpose the protection of the*

*public.* *Quo warranto* proceedings, on the contrary, deal mainly with the right of the incumbent to the office, independent of the question who shall fill it. They are brought in the name and on behalf of the people, to determine whether the incumbent has unlawfully usurped or intruded into, or is unlawfully holding, the office. They are not, primarily, in the interest of any individual, but are intended to protect the public generally against the unlawful usurpation of offices and franchises. It is true that, in the absence of a contesting statute, the common-law remedy by information is invoked by contesting claimants, though the relief obtained is inadequate, because the proceeding stops with the ouster; the contestant not being seated. 2 Dill. Mun. Corp. §§ 842–844. Such practice would be more readily adopted, under like circumstances, in this state, since the proceeding by information, made statutory, has been so enlarged as to permit the adjudication of the claimant's right to possession as well as the incumbent's title. Code, ch. 28. But the public and prerogative function of this proceeding is still, under our information statute, its most important characteristic, and the trial of a contestant's claim is secondary and subordinate.

It by no means follows that because one person unlawfully intrudes into or holds an office another is entitled thereto. The incumbent may have a majority of all the votes cast, but nevertheless be a wrong-doer. He may have been primarily ineligible or have become subsequently disqualified. If, in such case, he be ousted from the office, his opponent is not installed. A vacancy exists and a new election follows. *Darrow v. People, supra.* The proceeding by the people, through which the intruder is turned out and the vacancy created, is not an "election contest" within the meaning of this constitutional phrase; nor is a similar investigation by the people for frauds that, perchance, were not discovered till the time for the ordinary statutory election contest had passed, such a

proceeding. The incumbency, in all such cases, is a public wrong; and for this reason the people demand the removal. The office, like a franchise, in an important sense belongs to the people, and they simply assert their right to have it filled according to law, regardless of the private interest of any contestant or claimant.

Missouri has a constitutional provision like the one before us. The supreme court of that state declares that the election contests referred to have "no relation to *quo warranto* proceedings;" and further: "A *quo warranto* proceeding in the circuit court is not an election contest in the same sense in which those terms are used in the third and ninth sections of the constitution. That proceeding only determines that the person holding the office is or is not a usurper. But, ousting him, if the court finds against him, it adjudges the right to the office to no one." *State v. Francis*, 88 Mo. 557.

It follows from the foregoing that, in our judgment, statutes passed by the legislature, in obedience to the constitutional mandate on the subject of contested elections, do not prevent inquiry by *quo warranto* by the people into usurpations and unlawful holdings of office.

We are aware that this conclusion is not in harmony with the view taken in Ohio and Missouri, under constitutional provisions substantially similar. *State v. Marlow*, 15 Ohio St. 114; *State v. Francis*, *supra*.

But, with all due respect to those able courts, we believe it rests upon sounder principles of law, as well as wiser considerations of public policy. Surely, doubts, if they existed, should be resolved in favor of this jurisdiction by the courts. It is a matter of the greatest public importance whether ineligible or disqualified persons, or persons who by election frauds have secured an apparent majority of the votes, shall be permitted to usurp and hold public offices. Except upon legislation, constitutional or statutory, so clear as to be irresistible, the voice of the people in this matter should not be silenced.

The cases mentioned have not passed unchallenged. In *Kane v. People*, 4 Neb. 509, the court, per Lake, C. J., speaking with reference to the opinion in *State v. Marlow, supra,* say: "Indeed, even if our constitution were the same as that of Ohio in this respect, still we should hesitate long before adopting the conclusion that a contest under the statute was the exclusive mode of determining, in all cases, between conflicting claimants for an office. We should, as at present advised, be strongly inclined to hold that the remedy by *quo warranto* still remained as a concurrent remedy, to be resorted to at the option of the state, or of one claiming an office, against an incumbent wrongfully holding the same." It will be observed that we do not go so far as the view thus foreshadowed in the foregoing case.

The opinion in *People v. Hall, supra,* adverts to *State v. Marlow,* as taking a view contrary to the one announced. The disagreement is disposed of by saying that the case mentioned was put upon a peculiar requirement of the Ohio constitution; but the line of reasoning adopted, and the language employed, are such as to convince us that, had the Ohio provision existed in New York, the Ohio doctrine would not have been followed.

3. The declaration in section 8, article 7, of the constitution, that the ballots may be examined in contested elections, does not limit this examination to such proceedings. The right mentioned has always been freely exercised in *quo warranto,* which is the common-law method of inquiring into election frauds. And the purpose of this provision was to give, in the election contests authorized by section 12 of the same article, already considered, the privilege of inspecting and comparing ballots; not to withdraw it from the proceeding in which theretofore it had been universally exercised. The leading object of said section 8 was to preserve the purity of the ballot by insuring its secrecy; but, lest the language indicating this intent should be carried too far, and be-

come the means of perpetrating fraud, the privilege in question was carefully extended to election contests, in which, perhaps, it might otherwise have been challenged.

4. Chapter 27, Code of Civil Procedure (Laws 1887, p. 182), is a substitute for the original common-law *quo warranto* remedy. It prescribes an enlarged proceeding, substantially by information in the nature of *quo warranto*, and furnishes the exclusive method, so far as district courts are concerned, for investigating usurpations of office. The district attorney having refused to act in the present case, relator was expressly authorized by this statute to institute the proceeding. Being a "freeholder, resident and elector" within the city of Denver, relator's capacity to proceed in the name of the people cannot be challenged on the ground of insufficiency of interest. The fact that he was the opposing candidate, and claims to have received a majority of the votes legally cast, does not work his disqualification. It may be that he is more interested in vindicating his alleged private rights than he is in redressing the supposed public wrong. But this fact, if it be a fact, does not justify our refusal to investigate in this case the alleged usurpation, and render such judgment as the law permits and the public welfare requires. A certain degree of interest on the part of relators in *quo warranto* proceedings is generally deemed requisite; and the officious intermeddling by parties having absolutely no interest, either as tax-payers or voters, is disfavored.

But, since the constitution commands the legislature to designate the courts and judges by whom the several classes of election contests shall be tried, likewise to regulate the manner of trial, we are of opinion that the forum and procedure prescribed in obedience to this command are exclusive as to the kind of contests referred to, though the statute would otherwise be held cumulative. To this extent the constitutional mandate requires

a departure from the rule laid down by the authorities mentioned in the first part of this opinion. No such constitutional provision existed when those opinions were written. Therefore, in so far as relator seeks to give the present proceeding the character of an election contest purely, he must fail. By refusing to avail himself of the method provided in pursuance of the constitutional fiat for trying his right to the office, he has waived his personal claims in connection therewith. The provisions of our information statute, permitting the court, as a secondary matter, in proper cases, to adjudicate a contestant's claim to the office, do not aid him; for this is not a case in which such relief would be proper. Relator is in no better attitude than if he had made his contest before the board of supervisors and been there defeated. But the people, as we have seen, had no power to invoke that proceeding, nor could they have been made parties or privies thereto. And this is an additional reason why the estoppel which applies to relator, so far as his private interest is concerned, should not affect them. *People v. Hall, supra; State v. Hardie,* 1 Ired. 42.

Had the legislature entirely failed to obey the constitutional command, our conclusion might, in this particular, have been different. We might, under such circumstances, have held relator entitled to the private relief mentioned in the information statute. But it is not for us to here anticipate and enumerate the instances when election contests purely may be made a part of the proceedings by information; and we forbear further discussion.

· The foregoing views harmonize in the main with those expressed by the two opinions in *Darrow v. People, supra.* It will be observed by reference to those opinions that the specific objection under section 12, article 7, of the constitution, last above noticed, was not then considered. In so far, however, as the language there em-

ployed would seem to recognize the right of a contesting claimant to ignore the constitutional, statutory election-contest remedy, and have his personal claims to office adjudicated in the proceeding by information, it is qualified in accordance with the conclusion above stated.

Entertaining the views already announced in regard to the validity of the charter provision in relation to contests for mayor, a consideration of the statute. lodging in the county court jurisdiction to try contests for "town" officers is unnecessary. For, whatever meaning we should assign to the word "town," the provision would have no application to Denver.

The demurrer should have been overruled, and the judgment is accordingly reversed.

*Reversed.*