[No. 5670.]

THE PEOPLE EX REL. STIDGER, DISTRICT ATTORNEY, ET AL. V. HORAN.

1. **Appellate Practice—Jurisdiction—Quo Warranto.**

The supreme court has not jurisdiction to review, on appeal, a judgment for defendant in an action of quo warranto to oust defendant from an office, but has jurisdiction to review such judgment by writ of error, and where such judgment was brought to the supreme court on appeal the appeal will be dismissed and the cause entered as pending on writ of error.

2. **City and County of Denver—Offices and Officers—Constitutional Law.**

The charter convention of the city and county of Denver provided for by article XX of the constitution had no power to change the time of election, term of office and time when the term of office shall commence, of county officers.

3. **Quo Warranto—Election Contest—Pleading.**

A proceeding in quo warranto to oust a party from an office cannot be converted into a statutory election contest, and a demurrer to an answer which attempts to make such conversion should be sustained.

*Error to the District Court of the City and County of Denver:*

*Hon. F. T. Johnson, Judge.*

Mr. H. J. HERSEY and Mr. GEORGE STIDGER, for plaintiffs in error.

Mr. JOHN H. REDDIN and Mr. J. R. ALLPHIN, for defendant in error.

Mr. JUSTICE MAXWELL delivered the opinion of the court.

In all essential particulars this case does not differ materially from the county officers cases decided by this court June 23, 1905, except as hereinafter stated.

The amended complaint alleges that Horan, defendant in error, without warrant or authority of law, is usurping and intruding himself into the office of and unlawfully exercising the functions, powers and duties of coroner of the city and county of Denver; that November 8, 1904, a general election was held under and by virtue of the constitution and laws of this state, at which election county and precinct officers were voted for; that plaintiff and relator, Rollins, was the candidate of the Republican party, and defendant in error, Horan, was the candidate of the Democratic party; the eligibility of Rollins for such office is alleged; that Rollins was elected and received a certificate of election from the temporary election commission of the city and county of Denver; that the term of office to which he was elected began January 10, 1905; that Rollins duly qualified by filing with the proper officers his official bond and oath of office; that demand was made by Rollins upon Horan for the office of coroner, which office Horan claimed to be entitled to hold under and by virtue of an election thereto held May 17, 1904, under and pursuant to the charter of the city and county of Denver, alleged to have been adopted pursuant to article XX of the constitution; that demand for the office was refused.

A demurrer to the amended complaint was overruled and defendant in error filed his answer and amended answer to the amended complaint, which amended answer was divided into three parts, which for convenience of reference will be denominated first defense, second defense and third defense.

The first defense denies the election of Rollins, the usurpation charged and the filing and approval

of his official bond and oath of office; admits the issuance of a certificate of election to Rollins by the temporary election commission and in its final analysis admits all other material averments of the amended complaint.

The second defense avers the election of Horan to the office of coroner of the county of Arapahoe November, 1901, his eligibility for office and entry upon the discharge of the duties thereof in January, 1902; his election as coroner of the city and county of Denver at the time of the adoption of article XX in 1902 by the vote of the people of the whole state, and by the same vote which adopted article XX, and that by such election he was entitled to hold said office until an election was held under and by virtue of and pursuant to a charter for the city and county of Denver to be adopted as provided for by article XX; the adoption of a charter for the city and county of Denver pursuant to article XX; the election held under such charter of May 17, 1904, at which election Rollins was also a candidate and at which Horan was elected coroner of the city and county of Denver for the term of four years from June 1, 1904; the issuance to Horan by the temporary election commission of a certificate of election, his qualification for and entry upon the discharge of the duties of said office and his right to hold said office by virtue of such election; and that Rollins is estopped from claiming title to the office of coroner under and by virtue of the November, 1904, election by reason of his candidacy at the election of May, 1904.

The third defense is an attempt to convert a proceeding in *quo warranto* into a statutory election contest.

A general demurrer to the second and third defenses was overruled and reply filed without waiver of the demurrer to the second and third defenses.

The reply, after admitting several immaterial averments of the answer, denied each and every allegation thereof.

Trial to the court without a jury resulted in a judgment to the effect that Rollins take nothing by reason of his suit and that Horan recover his costs, from which judgment an appeal was taken and perfected to this court.

The transcript of the record was filed in this court June 6, 1905; June 8, 1905, a motion to advance the cause was filed and notice of a hearing on said motion served upon Horan and his counsel; June 21, 1905, counsel for Horan entered his appearance in this court and at the same time filed a protest against the making of any order dispensing with the filing of abstracts and briefs and oral arguments herein; July 26, 1905, counsel for Horan made application for an order on Rollins to show cause why he should not be adjudged guilty of contempt of this court and punished therefor, which application was supported by the affidavit of Horan. An order was entered the same day requiring Rollins to show cause on or before the first day of the September, 1905, term; August 25, 1905, a motion to dismiss the appeal was filed. Subsequent to the foregoing proceedings numerous orders relating to the filing of briefs in the various matters pending and the oral argument of the cause had been entered, all of which orders were complied with by counsel for both parties.

Oral argument was had September 21, 1905, and the cause finally submitted on that day.

The foregoing recital of the dates of the various orders set forth becomes important in the consideration of the motion to dismiss the appeal.

The motion to dismiss the appeal is upon the ground that the judgment appealed from does not

amount, exclusive of costs, to $100, and does not relate to a franchise or freehold.

The motion to dismiss the appeal must be allowed.

This court has jurisdiction to review the judgment of the court below by writ of error but not on appeal.

Jurisdiction of defendant in error has been conferred by his appearance.

Pursuant to Mills' Ann. Code, sec. 388a, the appeal will be dismissed, the clerk will be ordered to enter the action as pending on writ of error. Orders so providing are therefore entered.

Authority for this action is found in *D. & R. G. R. R. Co. v. Peterson,* 30 Colo. 77; *Taylor v. Colorado Iron Works,* 33 Colo. 179, 80 Pac. 129; *Bowling v. Chambers,* 20 Colo. App. 113, 77 Pac. 16.

Error is assigned upon the overruling of the demurrer to the second and third defenses.

As to the second defense, stripped of inconsistent and contradictory allegations, it is an attempted justification of the usurpation charged, based upon the May, 1904, election, the certificate of election issued by the temporary election commission to Horan and his qualification for and entry upon the duties of the office of coroner by virtue of such election and certificate.

In *People etc. v. Johnson, ante,* p. 143, and other cases involving the validity of the May, 1904, election decided at the April, 1905, term of this court, it was held that the charter convention of the city and county of Denver provided for by article XX of the constitution had no power to change the time of election, term of office and time when the term of office shall commence of county officers.

The office of coroner is a county office and therefore falls within the rule announced in the above

cited cases, and for the reasons there stated the demurrer to the second defense should have been sustained.

The construction placed by this court in the Johnson case, *supra*, upon the powers of the charter convention to frame a charter for the city and county of Denver is supported by the rule of contemporaneous legislative exposition which has been adopted in this state.

In *People v. Wright*, 6 Colo. 92, this court had under consideration the construction of a statute and an amendment to the constitution adopted by the 1877 session of the legislature. It is stated, page 97:

"That such was the intention we have evidence that must be accepted as of no little weight.

"The amendment under discussion was framed and submitted to the people by the legislature by an act approved February 23, 1877. Thirteen days thereafter, on the 8th day of March, the same legislature enacted the statutory provisions which are claimed to be in conflict with the amendment.

"The legislature were the framers of the amendment, and this statute must be taken as practically a contemporaneous exposition of it. * * *

" 'As in regard to statutes, so in regard to constitutions, contemporaneous and legislative expositions are frequently resorted to to remove and explain ambiguities.' * * *

" 'Great deference is due to a legislative exposition of a constitutional provision and *especially* when it is made almost contemporaneously with such provision and might be supposed to result from the same views of policy and modes of reasoning which prevailed among the framers of the instrument expounded.'—Sedgwick Stat. and Const. Law, 412; *People v. Green*, 2 Wend. 268, 274.

"In this case the statute in question is not only a legislative exposition of the amendment, but an exposition by the framers of the amendment, and must, we think, be accepted as conclusive."

The act submitting to the people article XX of the constitution was approved March 18, 1901.

March 25, 1901, an act submitting to the people amendments to sections 6, 8 and 11 of article XIV of the constitution was approved.

Section 6 of article XIV relates to county commissioners. The amendment proposed and adopted at the general election of 1902, the election at which article XX was adopted, contained the following: "Provided, that when the population of any county shall equal or exceed seventy thousand, the board of county commissioners may consist of five members, any three of whom shall constitute a quorum for the transaction of business. Three of said commissioners in *said* county shall be elected at the general election in the year nineteen hundred and four, and at the general election every four years thereafter; and the other two of said commissioners in *such* county shall be elected at the general election in the year nineteen hundred and six and every four years thereafter; and all of such commissioners shall be elected for the term of four years."

Section 8 of article XIV relates to county officers. The amendment proposed: "Sec. 8. There shall be elected in each county at the same time at which members of the general assembly are elected commencing in the year nineteen hundred and four, one county clerk, who shall be ex officio recorder of deeds and clerk of the board of county commissioners; one sheriff; one coroner; one treasurer, who shall be collector of taxes; one county superintendent of schools; one county assessor, and one county attorney," etc.

Section 11 of article XIV relates to justices of the peace and constables. The amendment proposed: "Sec. 11. There shall be elected at the same time at which members of the general assembly are elected beginning with the year nineteen hundred and four, two justices of the peace and two constables in each precinct in each county, who shall hold their office for a term of two years: Provided, that in precincts containing fifty thousand (50,000) or more inhabitants the number of justices and constables may be increased as provided by law. The term of office of all justices of the peace that expires in January, 1904, is hereby extended to the second Tuesday in January, 1905."

In 1901 the only county in the state which had a population equal to or exceeding 70,000 was Arapahoe, out of which the city and county of Denver was created by the adoption of article XX, and the only precincts containing 50,000 or more inhabitants were within the county of Arapahoe, so that after the adoption of article XX the only county falling within the provisions of the amendment to section 6 was the city and county of Denver, and the only precincts containing 50,000 inhabitants were also situated within the city and county of Denver, clearly indicating that it was not the legislative intention, in adopting article XX, to thereby grant to the charter convention power to legislate with reference to the time of election, term of office and time when the term of office shall commence of county officers.

Thus we have contemporaneous legislative exposition of the framers of these two amendments which must be accepted as persuasive.

As to the third defense, it is an attempt to convert a proceeding in *quo warranto* into a statutory election contest.

This conclusion cannot be avoided by the assertion that the third defense alleges that Rollins did not receive the highest number of votes and therefore was not elected, instead of alleging that Horan did receive the highest number of votes at such election and therefore was elected.

The concluding paragraphs of this defense are:

"The said defendant alleges that the official canvass and return of votes cast at said election for the office of coroner of said city and county of Denver by said temporary election commission is false and untrue, and that the true count and canvass of all the votes cast and returned in said city and county of Denver at said election for the office of coroner will show that the said relator, Robert P. Rollins, did not receive the highest number of said votes for said office and was therefore not elected under the constitution and laws of the state of Colorado to said office of coroner of said city and county.

"And said defendant further alleges that if it be true that said election of May 17, 1904, was not a valid and lawful election for the office of coroner of said city and county, then the said defendant is coroner of said city and county of Denver by virtue of the twentieth amendment to the constitution, and the said Robert P. Rollins, not having received the highest number of votes cast at said November election, and therefore not being elected at said election to the office of coroner of said city and county, and there being no successor to said defendant as coroner duly elected as provided in said twentieth amendment to the constitution, this defendant holds over and is entitled to hold over and retain possession of said office until his successor is duly elected, as provided in said twentieth amendment to the constitution.

"That there was grave error to the prejudice of this defendant in the counting of said votes at said

November election, and the certifying of the same and the abstract thereof by the said temporary election commission, and the defendant demands the opening thereof and a recount thereof."

The grave error complained of in the last paragraph of this defense is the order of this court entered January 7, 1905, in the case of *People v. Tool,* whereby it was ordered that the returns from ten precincts be excluded from the canvass of votes cast at said election.

In *People v. Londoner,* 13 Colo. 303, it was held that proceedings in *quo warranto,* such as this is, could not be converted into a statutory election contest.

The demurrer to the third defense should have been sustained.

The only issues of fact presented by the first defense were the execution, approval and filing of the official bond of Rollins, and the taking, subscribing and filing of the oath of office by him.

The evidence introduced by Rollins sustains in his behalf the issues presented.

There was no evidence to the contrary.

The judgment should have been for plaintiff in error and relator, Rollins.

For the reasons stated, the judgment rendered by the court below will be reversed, set aside and for naught held, and judgment rendered and entered in this court in favor of plaintiff in error, Robert P. Rollins, and against defendant in error, William P. Horan, as prayed in the amended complaint, except as to costs.

*Reversed.*

Decision *en banc.*

Mr. JUSTICE STEELE and Mr. JUSTICE GUNTER dissent.

Mr. Justice Gunter, dissenting:

This was an action to oust defendant from the office of coroner and to award the same to plaintiff Rollins. Defendant had judgment below, to review which the case is here. The plaintiffs were The People ex rel. and Rollins. The complaint alleged that Rollins was elected coroner of the city and county of Denver November 8, 1904, for a term commencing January 10, 1905; the issuance to him of an election certificate by the temporary election commission of said city and county; his qualification thereunder, and that he was at the time of the institution of this action—January 30, 1905—the duly elected coroner of said city and county, and entitled to the possession of that office.

It was further alleged that for some time prior to January, 1905, defendant had been the coroner of said city and county, but that his term of office as such had expired January 10, 1905, by the commencement of the said term of Rollins. Unlawful possession of the office by the defendant and his refusal to surrender the same were also alleged.

Judgment ousting defendant and declaring plaintiff Rollins entitled to the office was prayed.

Defendant answered. Two of the grounds of defense so presented will be considered.

1. Defendant claimed under an election held pursuant to the charter of the city and county of Denver May 17, 1904. Plaintiffs say that this question—that is, the legality of the May election—was determined in the other county election cases recently decided by this court.

True, the election of May 17 was held in such cases to be unconstitutional and declared to be a nullity. The writer of this dissent, however, was unable at the time of the handing down of the opinions in

such cases to agree with either the reasoning or the conclusions of the majority of the court therein, and dissented therefrom. Since then, in the consideration of the present case he has made a careful reexamination of the questions there involved and is still fixedly of the opinion that the court erred in its conclusions in such cases. The present case being one of the election cases presents a convenient opportunity of stating reasons for the dissent then and now.

A determination of the legality of the May election depends upon a construction of article XX and the legality of certain charter provisions made in pursuance thereof. Article XX, as an amendment to our constitution, was adopted by the people November 4, 1902, and went into effect through the proclamation of the governor December 1, 1902.—*Boston & C. Smelting Company v. Elder*, 20 Colo. App. 96; *City and County of Denver v. Adams*, 33 Colo. 1.

The constitutionality of such article was promptly challenged, but in April, 1903, after elaborate argument by eminent counsel, it was declared by this court to be constitutional. The question received by this court the grave consideration so weighty a matter deserved, as is evidenced by the learning and ability of the respective opinions of the three justices then constituting this court.—*People v. Sours*, 31 Colo. 369.

This decision was followed in *Town of Montclair v. Thomas*, 31 Colo. 327; *People v. Adams*, 31 Colo. 477; *Parsons v. People*, 32 Colo. 221; *City Council v. Board of County Commissioners*, 33 Colo. 1; *McMurray v. Wright*, 19 Colo. App. 17; *Boston & C. Smelting Company v. Elder*, 20 Colo. App. 96.

In speaking of this article in *People v. Adams*, *supra*, the court said:

"Its validity is no longer an open question. Plaintiffs do not question it. Indeed, they rely upon it for their title. The fact that the writer of this opinion believed it inoperative and void when its validity was directly attacked should not and does not lead him to nullify its provisions by hostile construction, nor does it comport with judicial propriety stubbornly to persist in further dissent from a decision acquiesced in by all departments of government. Rather is it the duty of every member of the court to give effect to the article in accordance with the intent of its framers as far as it can be done consistent with the language in which that intent has been manifested."

The constitutionality of this article was thus, it seems, finally settled. The new municipality, the city and county of Denver, came into existence pursuant to the provisions of this article, and was officered as therein provided. After the declaration by the court that the article was constitutional, two elections for members of a charter convention, as provided in this article, were held and charters framed by them were submitted to the people for adoption. The first charter was rejected; the second was adopted. An election was held for city and county officers under the charter adopted March 29, 1904. This election was held May 17, 1904, and the officers then elected entered upon the discharge of their duties of office June 1, 1904. It was not until January 30, 1905, that the present action was instituted. During the time from the going into effect of article XX—December 1, 1902—until July, 1905, the vast affairs of the city and county of Denver were administered under article XX, and under the belief, justified by the decision of this court, that its provisions were constitutional. In the language of this

court in *People v. Adams, supra,* "the decision was acquiesced in by all departments of government."

In July, 1905, this court, in the county election cases, held the charter unconstitutional in certain provisions, and thereby defeated some of the most useful purposes in the enactment of article XX. It was then held to be unconstitutional for the charter to provide for the consolidation of city and county offices, and unconstitutional for it to fix a different time for electing officers of the city and county of Denver from that provided elsewhere by the constitution and general laws of the state. The reason assigned for the holding was that for constitutional reasons it was incompetent for the charter convention to legislate on any "county office, officer, or matter," and that its legislation must be confined to matters of "purely local or municipal concern." It seems to the writer that any question as to the constitutionality of these provisions was put at rest by the decision of this court in *People v. Sours, supra,* not, as is contended by plaintiffs, against, but in favor of their constitutionality. The charter does not proceed further in legislating for the consolidation of city and county offices than was clearly contemplated by article XX, and if article XX was held constitutional, the same decision which so held ought to sustain the charter in the particulars held unconstitutional in this and the other county election cases. Let us examine the sections of article XX pertinent to this question. Section 2 thereof provides:

"Officers of the city and county of Denver shall be such as by appointment or election shall be provided by the charter; and the jurisdiction, term of office, duties and qualifications of all such officers shall be such as in the charter may be provided; but every charter shall designate the officers who shall, respectively, perform the acts and duties required of

county officers to be done by the constitution or by the general law as far as applicable. If any officer of said city and county of Denver shall receive any compensation whatever, he or she shall receive the same as a stated salary, the amount of which shall be fixed by the charter and paid out of the treasury of the city and county of Denver in equal monthly payments.''

The reading of this section is convincing that it contemplated that the charter convention should legislate as to ''county officers, offices and matters.'' It expressly provided that the

''Officers of the city and county of Denver shall be such as by appointment or election shall *be provided by the charter;* and the jurisdiction, term of office, duties and qualifications of all such officers shall be such as in the charter may be provided; but every charter shall designate the officers who shall respectively perform the acts and duties required of county officers to be done by the constitution or by any law as far as applicable.''

Not only was it contemplated by this section that the charter convention should legislate as to officers performing county duties for the city and county of Denver, ''observing the requirements that every charter shall designate the officers who shall respectively perform the acts and duties required of county officers to be done by the constitution or by the general law as far as applicable,'' but it was contemplated that there should be but one set of officers to perform duties discharged formerly by two sets of officers—that is, city officers and county officers.

Section 3 expressly provided for a merger of the city of Denver and all municipal corporations and that part of the county of Arapahoe within the boundaries of the said city into the city and county of Denver, and for the immediate ending of the terms

of office of all officers of the city of Denver and of all the included municipalities and of the county of Arapahoe, with certain exceptions not material, and *for the consolidation* of the offices of the city of Denver and the county of Arapahoe, and designated the officers who should perform such consolidated city and county duties until their successors should be elected and qualified as provided by charter.

Article XX thus provided for a consolidation of city and county offices, provided officers to perform such consolidated duties, and designated officers who, it provided, should perform such consolidated duties until a charter should be framed designating successors. Article XX thus legislated as to "county officers, offices and matters," and clearly contemplated that a charter should be enacted that would do likewise. This reasonable construction of article XX authorizing an immediate consolidation of offices, thereby saving the expense of one set of officers, and authorizing the adoption of a charter perpetuating this wholesome change, was an influential factor in securing the adoption of the charter. It cannot be said that the article would have been adopted with this feature of present and prospective consolidation of offices absent therefrom.

The article with these provisions as interdependent parts was held constitutional in *People v. Sours, supra,* and the other cases following it above cited. This being true, *People v. Sours* put at rest the questions involved in this case. If the ruling there that article XX, authorizing the enactment by charter of the provisions here in question was there held constitutional and such ruling is adhered to, the holding in the county election cases that such provisions, when embodied in a charter, is unconstitutional, is wrong. The ruling in the Sours case cannot be reconciled with the ruling in the county election cases.

The charter convention, in enacting the provisions
declared unconstitutional in the county election cases,
did nothing more than it was authorized to do by this
court in *People v. Sours.*

The court in the present case assigns a reason in
support of its conclusion not relied on in the other
county election cases, to wit, contemporaneous legis-
lative construction.

Instead of an examination of articles XIV and
XX evidencing a legislative intent that article XX
should be limited in its operation by article XIV as
amended, it evidences the intent that article XIV
should not operate on the city and county of Denver
should article XX be adopted—that is, that article
XX should not be limited in its operation upon the
city and county of Denver by the provisions of article
XIV. The bill providing for submitting article XX
was introduced by Senator Rush; the bill for submit-
ting amendments to article XIV by Senator Taylor.
The bill of Senator Taylor might pass the legislature
and be adopted by the people as an amendment to the
constitution; the bill of Senator Rush might fail of
passage or adoption. The bill of Senator Taylor was
so framed that in such contingency it might apply to
the county of Arapahoe, but that it might not by pos-
sibility conflict with article XX in the event of article
XX becoming a law, it was expressly provided at the
close of each of the sections proposed as amendments
to article XIV as follows:

"This section shall govern except as hereafter
otherwise expressly directed or permitted by consti-
tutional amendment."

This part of the respective sections of article
XIV is not quoted in the majority opinion. It is seen
from this excerpt that it was contemplated that ex-
ceptions to the operation of the respective sections
might exist. Such exceptions did result through the

enactment and operation of article XX. In section 8 of article XX the purpose is made manifest to have article XX control, as against any existing provisions of the constitution, or any proposed amendments to the constitution as those proposed to article XIV, by the use of this language:

"Anything in the constitution of this state in conflict or inconsistent with the provisions of this amendment is hereby declared to be inapplicable to the matters and things by this amendment covered and provided for."

The legislature which enacted article XX for submission certainly did not intend that if there should be anything inconsistent with article XX in the proposed amendments to article XIV, that such proposed amendments should control.

I shall not go further into this phase of the present case—that is, the constitutionality of the charter provisions providing for a May election and the consolidation of city and county offices—because my views are fully presented in the able dissenting opinion by Mr. Justice Steele in *People ex rel. v. Johnson,* in which I concur.

To conclude this branch of the present case, the legislation by the charter convention held in the majority opinion to be unconstitutional, was such legislation as was provided for by article XX. The sections thereof making provision for such legislation were interdependent parts of article XX, and when this court held that article constitutional, as it has done, it decided in effect the constitutionality of the legislation by the charter convention here involved— that is to say, *People v. Sours* is decisive of the present case in favor of this first defense. Further, if there were any reasonable doubt of the constitutionality of the provisions of article XX providing for such legislation by the charter convention and of such

legislation when enacted by the charter convention, the usual rule as to legislative enactments should apply—that is, if not unconstitutional beyond a reasonable doubt, they should be upheld. Further, if the question of construction be a close one, the argument *ab inconvenienti* should apply—Broom's Maxims (8th ed.), p. 184—because the constitutionality and legality of the provisions in question have long been recognized by "all departments of government," their being declared unconstitutional will lead to great confusion as to the law and much litigation, and such holding will nullify article XX in some of its most wholesome provisions.

It is my conviction, upon the ground of the legality of the May election, the judgment should have been for the defendant.

The second defense is, that defendant was elected coroner November, 1901, and that in default of the election of a successor he is entitled to hold over. The facts are: Defendant was elected coroner of the county of Arapahoe in November, 1901, and under such election qualified. Section 3, article XX, *supra,* provided that the coroner of Arapahoe county should become such officer of the city and county of Denver, and should hold such office until his successor should be elected and should qualify as should be provided by the charter to be adopted by the people of the city and county of Denver pursuant to said article XX. Section 2, *supra,* provided: "Officers of the city and county of Denver shall be such as by appointment or election may be provided for by the charter." This article, as has been seen, went into effect December 1, 1902. Defendant was then coroner of the county of Arapahoe, and perforce said section 3 of article XX became the coroner of the city and county of Denver, and continues to be such unless a successor has been elected and has

qualified in the manner provided by charter. According to the holding of this court in the county officers election cases the sections of the charter providing for the election of a coroner are void, so no provision exists by charter for the election of a successor, therefore defendant is entitled to hold over. Further, if a successor to defendant could be legally chosen in November, 1904, by proceeding under the general election laws, then there is no competent evidence before this court that plaintiff Rollins was elected at such time. If there is not such evidence, then there is no evidence that a successor has been chosen to defendant. If no successor has been chosen to defendant, then under said section 3 and section 1, article XII, our constitution, defendant is entitled to hold over.—*People ex rel. v. Reid,* 11 Colo. 138.

The only evidence that plaintiff Rollins was elected was an election certificate of which the following is a copy:

"United States of America, ⎫
"State of Colorado, ⎬
"City and County of Denver. ⎭

"Greeting:

"The temporary election commission in and for said city and county of Denver does hereby certify that at an election held in said city and county of Denver on the 8th day of November, A. D. 1904, Robert P. Rollins received the greatest number of votes cast for the office of coroner in and for the said city and county, as appears from the official canvass of the returns of the votes cast for said office in the said city and county, except precinct No. 13 in ward 3, precincts Nos. 1, 2 and 3 of ward or district No. 4, precincts Nos. 6, 7, 8 and 9 of ward or district No. 5, and precincts Nos. 8 and 10 of ward or district No. 7, which are excluded from said canvass by order of

the supreme court of the state of Colorado, entered on the 7th day of January, A. D. 1905, in the cause of *The People of the State of Colorado on the Relation of N. C. Miller, Attorney General, et al. v. John Tool et al.,* and that the said Robert P. Rollins is elected coroner as aforesaid.

· ''In witness whereof, the temporary election commission.has caused these presents to be signed by its president, attested by its secretary and sealed with the official seal of the commission this 9th day of January, A. D. 1905.

''The Temporary Election Commission.

''By    [Signed]    F. F. Graves, President.
[Seal.]    ''City and County of Denver.
''Attest:    [Signed]    E. E. Dorsey, Secretary.''

The legality of this certificate and the competency as evidence of plaintiff Rollins' election we shall consider later.

This action was brought under chapter 27 of our code, entitled ''Of Acts for the Usurpation of an Office or Franchise.'' Pertinent sections are : ''Whenever such action is brought the district attorney or relator, in· addition to the statement of the cause of action, may also set forth in the complaint the name of the person rightly entitled to the office, with a statement of his rights thereto.''—Sec. 290, Mills' Ann. Code; and ''In every such case such judgment may be rendered upon the right of the defendant, and also upon the right of the party so alleged to be entitled, or only upon the right of the defendant, as justice shall require.''—Sec. 291, *Ib.* Also ''If judgment be rendered upon the right of the person so alleged to be entitled, and the same be in favor of such person, he may recover by taking the oath of office and executing such official bond as may be required by law, to take upon himself the execution of the office.''—Sec. 292, *Ib.*

The chapter mainly deals with the right of the incumbent to the office. This is its most important characteristic, but it does permit the adjudication of the claimant's right to possession as well as the incumbent's title. The proceeding under this chapter "has been so enlarged as to permit the adjudication of the claimant's right to possession as well as the incumbent's title. * * * But the public and prerogative functions of this proceeding is still under our information statute, its most important characteristic, and the trial of the contestant's claim is secondary and subordinate."—*People ex rel. v. Londoner,* 13 Colo. 303, 311.

In the present case, as has been seen, the complaint alleged that plaintiff Rollins was elected to the office of coroner November, 1904, that he had received a certificate of election, and that he had qualified. It further alleged that defendant was holding over after the expiration of a previous term, and that he was usurping the office. These allegations were denied. Plaintiff Rollins, to make out his case—that is, that the term of the defendant had ended by the election of plaintiff Rollins and that he, Rollins, was entitled to the office in question—introduced the above certificate of election. The case was narrowed to the issue of whether or not plaintiff Rollins had been elected at the November election, 1904. If not, the term of defendant was not ended, in which case defendant should not have been ousted nor should the office have been awarded to the plaintiff Rollins.

So far as the question before us is involved, chapter 5 of Deering's Ann. Codes and Statutes of California is the same as chapter 27 of our code.

*People v. Banvard,* 27 Cal. 470, was a proceeding under this chapter. An excerpt from the syllabus thereof expresses the ruling of the court so far as pertinent to the question before us.

"In an action of *quo warranto* to determine the right to an office, where the relator claims his office as against the incumbent, the court may not only determine the right of the defendant, but of the relator also; and if it determines in favor of the relator, may render judgment that the defendant forthwith deliver up to the relator the office."

As defendant was claiming to hold over and was concededly entitled to hold over unless Rollins was elected at the November, 1904, election, it was an issue between the people and the defendant as to whether Rollins was elected at the November, 1904, election. In such case it was proper for the court to go into the question of Rollins' election.—High Extra. Legal Remedies (3d ed.), § 712.

Further, as stated above, this question ought to have been gone into because the court should be advised as to whether it should enter judgment for Rollins or not. It could only be so advised by Rollins showing himself entitled to exercise the functions of the office. If evidence of the claimant's title were not required, the action might be used simply to exchange one illegal incumbent for another. A proceeding brought in the name of the people chiefly for the purpose of ousting a usurper should certainly not be used to induct into office one not entitled thereto.

"In a statutory civil action for the recovery of an office or in an information filed by an individual to try the right to an office as against an alleged usurper, the plaintiff must show his own legal title, and cannot recover upon the infirmities of that of the defendant."—Ency. of Pl. and Pr., vol. 17, p. 463.

When the issue between the people and the defendant necessarily involves the right of a third person, the court must determine such right in ruling the case.—*People ex rel. v. Miles,* 2 Mich. 348.

While a determination of the alleged usurpation of a defendant may not be dependent upon a determination of the right to the office by a relator, yet when the determination of such usurpation is dependent upon the determination of the right of the relator, then that question must be gone into. This is also true if the court attempts by its judgment to induct the relator into office.

In *People ex rel. v. Walker*, 23 Barbour 304, it was said:

"As the complaint shows that the defendant previously held the office, and does not set up any objection to his previous title, but only claims that he usurped the office in continuing to hold it after the election, it was not necessary for the defendant to set forth his title; he could rely on his prior title thus admitted unless the plaintiff has shown a better title in the relator."

Such seems to have been the status of this case. Defendant was entitled to hold over unless a better title was shown in Rollins through the election of November 8, 1904. If such better title did not appear then defendant was entitled to retain his office.

In *Dyer v. Bagwell*, 54 Iowa 487, an action was brought by a relator to oust a defendant from office, and for judgment in favor of relator by inducting him into office. The defendant claimed the right to retain the office until his successor was elected and qualified. He claimed that before a judgment could be entered against him and in favor of the relator it must be shown that relator had been elected and was qualified. This contention was sustained by the court.

We think we are justified in deducing from these authorities that the question of relator's election was an issue between the people and defendant which it was necessary to determine before a judgment of

ouster could be entered against defendant. We further think that it was a question necessary to be determined before—in this action, which is one of a public nature, brought to prevent a usurper from retaining an office—the court would be justified in entering, as it did enter, a judgment inducting relator Rollins into office. We say then that it was necessary for relator Rollins to show that he was elected at the November 8, 1904, election before either he or the people could have a judgment in this case. There is nothing contra this conclusion in *People ex rel. Barton v. Londoner*, 13 Colo. 303, or in the same case 15 Colo. 557. The question decided in *People v. Londoner*, 13 Colo. 303, was whether an election contest was the exclusive remedy for ousting the usurping defendant from office. It was held that it was not and that an action for such purpose of the character of the one before us would lie. This significant language was used in the opinion: "It is true that in the absence of a contesting statute the common-law remedy by information is invoked by contesting claimants though the relief obtained is inadequate, because the proceeding stops with the ouster, the contestant not being seated. * * * Such practice would be more readily adopted, under like circumstances in this state, since the proceeding by information, made statutory, has been so enlarged as to permit the adjudication of the claimant's right to possession as well as the incumbent's title.— Code, ch. 28. But the public and prerogative function of this proceeding is still under our information statute, its most important characteristic, and the trial of the contestant's claim is secondary and subordinate."

In *People ex rel. Barton v. Londoner*, 15 Colo. 557, the only question decided pertinent to those we are now considering was this: Londoner received

a certificate of election as mayor; his predecessor vacated and Londoner took possession of the office. On relation of Barton, the adverse candidate, a proceeding in the nature of *quo warranto* under the code was instituted for his ouster. The outgoing mayor was not a party to the proceeding. Judgment of ouster was entered below and a further order that the office should be turned over to the president of the board of supervisors. The statute then provided that in case of a vacancy in the office of mayor the president of the board of supervisors should act as mayor. The court held that no error was committed, because as the preceding mayor had vacated by surrendering the office to the defendant Londoner, and was not a party to the proceeding and was not complaining, that a vacancy existed in the contemplation of the statute. The court in the course of its discussion of this feature of the case used this significant language: "Had the outgoing mayor been a candidate for reelection and had he refused to turn over the office or recognize his successor until forcibly dispossessed, the situation would perhaps have been different and a different question might be presented."

We repeat, the case does not rule the question we are now discussing.

The principle upon which the remedy provided by chapter 27 proceeds is to prevent a public wrong by ousting the usurper from office. In executing such purpose, as is seen in the Londoner case, the court is permitted to go behind the certificate of election of the incumbent and determine whether he was legally elected. It further accords facilities for interrogating the voter afforded by an election contest. As a claimant, according to the express language of the code, may be awarded the office in the same proceeding that is availed of to oust a usurper, we cannot

see why, in determining whether the claimant shall be awarded the office, the court should not go into the question of whether such claimant was legally elected, not because the defendant is interested, but because the public is. If this be not permitted we cannot see but what the purpose of the remedy will be perverted. It may be used to oust a usurper and to induct into office a successor not legally entitled thereto. The character of the remedy is such it certainly ought not to be used except for the public good.

But in discussing whether the election certificate of Rollins could be gone behind, and it be shown in this particular proceeding that he was not elected, we go further than necessary to this ruling, certain it is, however, before a judgment could be entered for Rollins it was necessary for him to show a *prima facie* right to the office. His only offered evidence of such right was the above election certificate. This certificate, as is seen from its inspection, was issued by the election commission created by the charter. This commission superseded the county clerk and two justices who under sec. 1626, 1 Mills' Ann. Stats., had theretofore canvassed the votes in a county election and had issued the certificate of election. It is not disputed, and it certainly cannot be, that if the decisions in the election cases are right and the provisions of the charter unconstitutional which fixed the election for the county officers on May 17 and provided for a consolidation of city and county offices, then, for the same reason assigned by the court in so ruling, this election commission was an unconstitutional body. It existed in violation of and without authority of law. If this be true, then its certificate of election was simply a nullity, and being a nullity, did not prove that Rollins was elected coroner; there was therefore no proof before us that Rollins

or any other person was elected coroner on November 8, 1904. If a successor to defendant was not elected, then defendant was entitled to retain his office. If Rollins was not elected, then certainly a judgment should not have been entered inducting him into office.

McCreary on Elections, at § 303, says: "No particular form of credentials is required. It is sufficient if the claimant to an office presents a certificate signed by the officer or officers authorized by law to issue credentials, and stating generally the fact that the election was duly held and that the claimant is duly elected to the office in question."

And at § 306: "It is enough for a *prima facie* case if the certificate comes from the proper officer of the state, and clearly shows that the person claiming under it has been adjudged to be duly elected by the officer or board on whom the law of the state has imposed the duty of ascertaining and declaring the result."

A fatal objection to this certificate is, it was not issued by officers authorized by law to issue it, nor was it issued upon the judgment of persons authorized by law to pass on the results of the election. It was issued according to the ruling in said election cases by an unconstitutional body, because the election commission was created by the charter convention, which convention, according to the ruling in the election cases, had no power to create an election commission. It is not denied that the election commission was an illegal body; it is contended, however, that this election commission was a *de facto* body, and being a *de facto* body, its certificate had all the validity of a *de jure* body. That the election commission was a *de facto* body we think is clearly not the law. If the act of the charter convention creating this commission was unconstitutional, then there was no election commission; it had no existence.

An election commission was attempting to exercise the functions of a county clerk and two justices of the peace; not as clerk and two justices of the peace, but as an election commission. There can only be a *de facto* officer when there is a *de jure* office. There was no *de jure* election commission; therefore there could be no *de facto* election commission.

In *Norton v. Shelby County,* 118 U. S. 425, suit was brought to enforce payment of certain bonds issued by the board of commissioners of Shelby county in payment of a subscription by the county to stock in a certain railroad company. By a previous act of the legislature the county court of any county through which a railroad might run was authorized to subscribe to its capital stock. The legislature by a subsequent act vested such power formerly belonging to the county court in a board of commissioners created by that body. The act creating the board of commissioners was held by the supreme court of Tennessee to be unconstitutional and the board created by it to have no legal existence. The board of commissioners, before the court so held, had organized and had performed the functions of the county court, and among other things had subscribed in the name of the county to the stock in question and had issued bonds in payment therefor. It was contended that if the commissioners were not officers *de jure* of the county they were officers *de facto,* and as such their action in making the subscription and issuing the bonds was equally binding upon the county. The court held that they were not *de facto* officers, and that their action in issuing the bonds was a nullity. The court in the course of an opinion by Mr. Justice Field said:

"But it is contended that if the act creating the board was void and the commissioners were not officers *de jure* they were nevertheless officers *de facto,*

and that the acts of the board as a *de facto* court are binding upon the county. This contention is met by the fact that there can be no officer either *de jure* or *de facto* if there be no office to fill. As the act attempting to create the office of commissioner never became a law the office never came into existence. Some persons pretended that they held the office, but the law never recognized their pretensions, nor did the supreme court of the state. Whenever such pretensions were considered in that court they were declared to be without any legal foundation and the commissioners were held to be usurpers.

"The doctrine which gives validity to acts of officers *de facto,* whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy and necessity for the protection of the public and individuals whose interests may be affected thereby. Offices are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the evidence of such offices and in apparent possession of their powers and functions. For the good order and peace of society their authority is to be respected and obeyed until in some regular mode prescribed by law their title is investigated and determined. It is manifest that endless confusion would result if in every proceeding before such officers their title could be called in question. But the idea of an officer implies the existence of an office which he holds. It would be misapplication of terms to call one an officer who holds no office, and a public office can exist only by force of law. This seems to us so obvious that we should hardly feel called upon to consider any adverse opinion on the subject but for the earnest contention of plaintiff's counsel that such existence is not essential and that it is sufficient if the office be provided for by any legislative enact-

ment, however invalid. Their position is that a legislative act, though unconstitutional, may in terms create an office and nothing further than its apparent existence is necessary to give validity to the acts of its assumed incumbent. That position, although not stated in this broad form, amounts to nothing else. It is difficult to meet it by any argument beyond this statement. An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is in legal contemplation as inoperative as though it had never been passed.''

See also *Hildreth v. McIntire,* 1 J. J. Marsh. 206; *Carleton v. People,* 10 Mich. 250.

It is said the question of the inadmissibility of the election certificates was passed upon in the other election cases. The decisions therein do not show it, nor do we see how the question could have been presented under the pleadings. Those proceedings were under chapter 27, *supra,* and were disposed of below by the sustaining of the demurrers of defendants to the complaints of those claiming the offices. When the cases came here they were considered on the sufficiency of the complaints which alleged the election of plaintiffs on November 8, 1904, and which election the demurrers of the defendants necessarily admitted. The briefs of appellants (the plaintiffs below) asked simply a reversal, and such was the order when the original opinions were handed down. Petitions for rehearing were then filed for the appellees (defendants below). In the rulings of this court upon these petitions the original opinions were modified to the extent of entering up judgments in this court ousting appellees (defendants) and inducting appellants (plaintiffs) into the controverted offices. There was no occasion under the pleadings in those cases in the court below to discuss or consider the question of

the incompetency of the certificates of election by the election commission, nor was there occasion or opportunity to discuss such question in this court. Had the cases when reversed been sent back for trial, as is usual, and as I think was clearly the duty of the court, then an opportunity for appellees to be heard on the questions of the competency of the election certificates and the legality of the plaintiff's election would have been accorded. If counsel for appellants had asked in their briefs a final judgment in those cases in this court or had otherwise applied for final judgment here an opportunity would have been afforded appellees to resist such application on the ground that the very questions here presented would be relied on as a defense in a retrial below. But the court, upon the petitions for a rehearing, without application having been made in the briefs or otherwise, entered up final judgment.

To repeat, there was no opportunity or occasion for this question being presented or considered before this time, and it has not been ruled by this court.

To sum up, I am strongly of the opinion that defendant's title was good under the May election, but if the rulings in the other county election cases be followed and his title in consequence is ill as dependent upon such election, then I am fixedly of the opinion that the plaintiff has not shown that a successor to defendant has been elected, and if plaintiff has not so shown, as he assumed to do, defendant is entitled to hold over. And further, even though the court was justified in entering a judgment of ouster against defendant—which I do not concede—it was not justified according to its rulings in the other county election cases in entering a judgment inducting the plaintiff Rollins into office, because the election certificate upon which he relied to show his right to the office according to those holdings was a nullity.

I think the judgment below should be affirmed.

Mr. JUSTICE STEELE concurs.